JOSEPH R. WIEDEMANN, Plaintiff-Appellant, *v.* CUNARD LINE LIMITED *et al.*, Defendants-Appellees.

First District (1st Division)   No. 77-907

Opinion filed August 21, 1978.

Richard J. Aronson, of Chicago, for appellant.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Mairen K. Christenson, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Joseph R. Wiedemann, appeals from the order of the circuit court of Cook County which granted the motion of defendant, Cunard Line Limited (Cunard), to quash the service of summons and dismiss the complaint against it. Plaintiff contends that defendant is subject to *in personam* jurisdiction of the Illinois courts because it has employees and agents in Illinois, advertises in Illinois and contracted with plaintiff in Illinois.

Plaintiff's complaint seeks damages for personal injuries he suffered while using the ocean beach at the Hotel LaToc, located on the island of St. Lucia, West Indies. Count I of the complaint alleges that Cunard "owned, operated, managed, maintained and controlled" the hotel and its premises and that Cunard was doing business in Cook County, Illinois, "by and through its agents, employees, brochures, and advertisements." It was further alleged that a co-defendant, GWV Travel Inc. (GWV), was a corporation in the business of booking and operating tours as an agent and servant of Cunard and which contracted with plaintiff in the City of

Chicago for such a tour. Plaintiff alleged he was induced by brochures and advertisements of the defendants to contract, and did contract, with the defendants for the tour which included the beach and ocean facilities of the Hotel LaToc. Plaintiff alleged that the defendants had the duty to use reasonable care for the safety of the plaintiff as a hotel guest and the duty to warn the plaintiff of the unreasonably dangerous condition of the beach. It was alleged that the defendants breached these duties by negligent failure to warn plaintiff of the dangerous beach, negligent advertisement that plaintiff would have the use of a safe beach, negligent failure to provide a lifeguard, and negligent failure to erect and maintain a structure to prevent plaintiff from using the dangerous beach. It was alleged that plaintiff's injuries were proximately caused by one or all of the above acts or omissions of the defendants.

Count II of the complaint alleged that defendants represented that the beach and ocean facilities were safe for wading and swimming, and that plaintiff contracted with defendants on the basis of this representation, but that the representations were false and misleading and the beach was not fit for the purpose advertised. It was alleged that plaintiff's injuries were proximately caused by the breach of contract by defendants.

Service of process was made upon defendant Cunard in New York, New York. Cunard filed a special appearance and moved to quash service of summons, objecting to the court's jurisdiction over the person of Cunard. Defendant GWV was served in Needham, Massachusetts, and also filed a special appearance and moved to quash on the ground of lack of personal jurisdiction of the Illinois courts.

Each defendant filed an affidavit in support of its motion to quash. Cunard's affidavit, sworn to by a vice president of the company, states that Cunard is a corporation organized under the laws of Great Britain and maintains an office in New York. Further, Cunard has never been authorized to transact business in Illinois, it has not consented to be sued in Illinois, it owns no property in Illinois, and maintains no office in Illinois. None of Cunard's employees or agents sells any passenger tickets or tickets for any tour or vacation tour in Illinois. The affidavit states that Cunard is in the oceanic shipping business and owns the "Cunard Adventurer," which was the ship on which plaintiff had been given passage as part of the vacation package arranged by GWV. GWV arranged and operated the tour, including the making of all air, ship and hotel reservations; all reservations were made outside of the State of Illinois. Plaintiff purchased his tour ticket from Travel-Wide, an independent travel bureau in Northbrook, Illinois. Cunard's affidavit further stated that Cunard had no contractual relationship with plaintiff; GWV reserved a number of spaces on the "Cunard Adventurer" and paid Cunard directly, and their transaction had no connection with the State of

Illinois. Cunard had no contractual or other relationship to plaintiff concerning the Hotel LaToc. Cunard stated that no ownership or agency interest existed between itself and any of the other defendants, including Hotel LaToc, nor did Cunard have the right or power to control or direct any of their activities. Cunard denied that it, or its agents or employees, had made contact with plaintiff in Illinois to solicit the sale or to sell the tour package plaintiff purchased from Travel-Wide. Cunard denied any responsibility for the condition of the beach at Hotel LaToc, and denied ever making any representation to plaintiff, in Illinois or elsewhere, that the beach was safe for wading or swimming. Cunard denied committing any tortious act in Illinois or elsewhere which would subject it to the jurisdiction of the Illinois courts, and denied that it had transacted any business in Illinois which would subject it to the jurisdiction of the Illinois courts in this case. Finally, Cunard states that, both at the time it contracted with GWV and at the time plaintiff purchased his ticket, Cunard did not and could not foresee that it would be required to defend a suit such as this in Illinois.

GWV's affidavit, sworn to by its vice president-treasurer, states that it is a Delaware corporation, with its offices and principal place of business in Massachusetts. It owns no property and maintains no office in Illinois. None of its officers, employees or agents lives, works, solicits or transacts business in Illinois. GWV is not authorized to transact business in Illinois and it has not consented to be sued in Illinois. The affidavit states that GWV is in the business of organizing and operating vacation tours, which frequently include air and ship travel, as well as hotel accommodations.

With reference to the tour taken by plaintiff, GWV, after conceiving and planning the itinerary, reserved blocks of airline, steamship and hotel accommodations as an independent contractor. Tickets for the tour were sold by Travel-Wide, an independent travel bureau in Northbrook, Illinois, which retained 10% of plaintiff's payment as its commission, then issued its own check to GWV in payment of the tour charge. Plaintiff's purchased tour included a flight on Overseas National Airways from Chicago to San Juan, Puerto Rico; a cruise on the "Cunard Adventurer," a ship owned and operated by defendant Cunard; one week's accommodation at Hotel LaToc, St. Lucia, W.I.; ship transportation back to San Juan; and air transportation back to Chicago.

GWV's affidavit stated further that the only involvement of Cunard was to provide ship accommodation and transport, and the voyage of the "Cunard Adventurer" had no contact with the State of Illinois. GWV denied having made contact with or having communicated with plaintiff in Illinois or soliciting in Illinois the sale of the vacation package purchased by plaintiff. GWV has no ownership or agency interest or relationship with Travel-Wide, Hotel LaToc, or any other defendant, nor

does GWV have the power or authority to control or direct their activities. Conversely, GWV is not controlled or directed by any of the other defendants. GWV denied that it had any responsibility for the beach at the Hotel LaToc or the management of the hotel, and further denied that it had ever represented to plaintiff that the beach was safe for wading and swimming. GWV again denied that it was an agent of the Hotel LaToc, and stated that its only relationship with the hotel was in booking a block of accommodations, which act or acts took place outside the State of Illinois. Finally, GWV stated that at the time it developed the "Cunard Adventurer" tour package, and at the time plaintiff purchased his ticket from Travel-Wide, GWV did not and could not foresee that it would be compelled to defend a lawsuit such as this in Illinois.

In response, plaintiff filed his own affidavit and several exhibits. His affidavit states that prior to December 1975 he had seen numerous advertisements for "Cunard Fly/Cruise" package tours in the Chicago Tribune and in national periodicals. In July and December 1975, plaintiff personally met with a representative of Travel-Wide in Northbrook, Illinois, and at that time plaintiff "understood" that Travel-Wide was an authorized agent for Cunard with authority to book tours for Cunard. Plaintiff was shown a Cunard display at Travel-Wide's office and was given brochures advertising the Cunard tours, including the "Cunard Adventurer Fly/Cruise" and a brochure describing Cunard's resort hotel, LaToc, including the beach facilities. Plaintiff paid for the complete tour, which included air fare, cruise accommodations and the hotel, and was issued a ticket from Cunard, dated and stamped by "Agent, Travel-Wide." Plaintiff understood that the air carrier had been chartered by Cunard. The affidavit also stated that all of the brochures and advertisements in the hotel lobby and in plaintiff's room referred to the hotel as "Cunard's Hotel LaToc" and that "Cunard's hotel manager and other employees continually represented to affiant and his wife that the beach was safe for wading and swimming." Finally, plaintiff stated that after his return to Chicago, he received in the mail at his home a letter and questionnaire from the hotel manager and a "newsletter" from Cunard advertising its 1976 cruises and tours.

Exhibit 1, attached to the affidavit of plaintiff, appears to be a copy of a page from the Chicago yellow pages telephone directory, which contains a listing for "Cunard Adventurer & Q E II Cruises—Agents, Great Lakes Transit Company, Inc." Exhibit 2 appears to be a copy of an advertisement from the travel section of the Chicago Tribune for Sunday, November 14, 1976, for the "Cunard Countess" cruise ship. The coupon included in the advertisement has the address, "Cunard/GWV Travel, Inc., 115 Allen Boulevard, Farmingdale, N. Y." printed on it. The copy makes reference to "Cunard's lovely Hotel LaToc." Exhibit 3 appears to

be a copy of the November 1976 "Cunard World, A Private Newsletter for Cunard Past Passengers." It appears to be addressed to plaintiff at his home and purports to have been sent by "Cunard, 555 Fifth Avenue, New York, N. Y." An article refers to "Cunard's luxurious LaToc resort on unspoiled St. Lucia," and describes the accommodations there. Exhibit 4 appears to be a map, labelled "LaToc Development." Printed as part of the descriptive copy is the statement that LaToc "has one of the best beaches in St. Lucia." Also stated in the copy is the following:

> "The Development has been carried out and is managed by LaToc Holdings Limited, a subsidiary of Trafalgar House Investments Limited, a large U. K. public company involved in property, construction, hotels—both resort and commercial—and shipping through its subsidiary the Cunard Steam-Ship Company."

Exhibit 5 appears to be a photocopy of the "Cunard Passage contract ticket," the last page of which has printed on it a form with blanks to be filled in with the name of the passenger, destination, fare and so on. On the copy in the record, the filled-in information is unreadable. Exhibit 6 appears to be a copy of a brochure entitled "Cunard's Caribbean," which contains two references to "Cunard's Hotel LaToc." The final page is entitled "General Information and Conditions," and under the heading "Responsibility" is the statement:

> "Cunard Line Ltd. and/or their agents or representatives act only as agents for passengers with respect to the air, land transportation and hotels and as such hold themselves free of liability for any injury, delay or damage from any cause whatsoever. ° ° °"

Exhibit 7 appears to be a copy of an advertisement for LaToc, dated November 8, 1976, requesting the reader to write for a brochure to "Cunard Resorts" in New York. Exhibit 8 appears to be a copy of a letter from "Hamish Watson, Manager, Hotel LaToc," thanking the recipient, "[o]n behalf of Cunard," for staying at the hotel. Plaintiff, in his brief accompanying the affidavit, also asserted the existence of a Cunard full-time employee, a district manager, located in Chicago.

Cunard filed a reply affidavit attested to by two Cunard employees, Walco Visser and Gerald Manczak. They are employees of Cunard who reside in Illinois and who "promote travel on Cunard ships, as a component of group vacation travel packages." Their activities are "limited to providing information and brochures to independent travel bureaus" in the various midwestern states, including Illinois. Less than 50% of their time is spent in Illinois. Cunard maintains no office in Illinois; both Visser and Manczak work out of their homes when they are not traveling. Cunard pays no rent or expenses except the charges for one telephone for

each man in Illinois. Neither employee is authorized to enter into contracts on behalf of Cunard. Neither sells tickets nor has contact with ticket purchasers for Cunard cruises or tour packages. Neither employee ever had contact with the plaintiff. Travel-Wide Ltd. (the travel bureau from which plaintiff received his Cunard ticket) sells fly/cruise vacation tour packages as follows: A prospective customer contacts the travel bureau. The bureau then calls an out-of-State telephone number to determine if space is available; if available, the bureau makes a reservation on behalf of the customer in exchange for a $100 deposit. The bureau within 10 days must remit the deposit to an escrow account in New York. The balance of the purchase price, less the bureau's commission, must be paid not less than 60 days before departure. Two weeks before departure all tickets and documentation are prepared and mailed from New York to the travel bureau, which then delivers them to the customer. All payments are made by the customer making his check payable to the travel bureau. The travel bureau then issues its own check to GWV, which is deposited in the New York escrow account. Cunard prepares and issues the steamship ticket itself in its New York office. Visser and Manczak have nothing to do with the above activities. In reference to plaintiff's exhibits, Visser and Manczak stated that the telephone listing of Great Lakes Transit Company as agent for Cunard was not placed or authorized by Cunard, nor have they ever placed such advertisements; the LaToc brochure was neither prepared in, nor sent to, Illinois, but rather appears to be a brochure made available at Hotel LaToc to its guests; the Cunard newsletter, Exhibit 3, was not prepared or printed in Illinois and was not distributed by Visser or Manczak; the hotel manager, Hamish Watson, author of Exhibit 8, is not a Cunard employee, but rather is employed by LaToc Holdings, Ltd.; and the steamship ticket was not issued from, prepared in, or dated in Illinois, but rather was prepared in New York by a Cunard employee, whose signature it bears.

The notice of appeal filed by plaintiff requested reversal of the order of the trial court which quashed service of process on defendants Cunard and GWV. However, plaintiff's brief and reply brief are directed only toward arguments that personal jurisdiction over defendant Cunard is present in Illinois; no arguments are made concerning defendant GWV. An appellant who fails to argue an issue waives it, according to Supreme Court Rule 341(e)(7). (58 Ill. 2d R. 341(e)(7).) Therefore the order, insofar as it concerns defendant GWV, is affirmed.

Plaintiff argues that Cunard is subject to the personal jurisdiction of the Illinois courts because (1) Cunard "transacted business" in Illinois within the meaning of section 17(1)(a) of the Civil Practice Act, and (2) Cunard committed a "tortious act" in Illinois within the meaning of section 17(1)(b) of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, pars.

17(1)(a), 17(1)(b).) Cunard argues that it had insufficient contact with Illinois to subject it to jurisdiction for "transaction of business" in Illinois; that even if it were doing business within the meaning of section 17(1)(a), plaintiff's cause of action did not arise from those contacts, as required by section 17(3); and that it committed no "tortious act" in Illinois or elsewhere which would subject it to jurisdiction under section 17(1)(b). Ill. Rev. Stat. 1975, ch. 110, pars. 17(1)(a), 17(3), 17(1)(b).

■■■ Section 17 of the Civil Practice Act reflects a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause of the fourteenth amendment to the United States Constitution. (*Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, 143 N.E.2d 673, 679.) "[D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154.) Whether a defendant's contacts with Illinois are sufficient to subject it to personal jurisdiction here depends upon the facts of each case and is to be determined "❋ ❋ ❋ by ascertaining what is fair and reasonable in the circumstances. In the application of this flexible test the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 440, 176 N.E.2d 761, 765.

■■ The court makes a preliminary inquiry into whether the complaint states a cause of action against the defendant who contests jurisdiction, to insure that acts or omissions which form the basis of a cause of action that is patently without merit will not serve to confer jurisdiction. *Stansell v. International Fellowship, Inc.* (1974), 22 Ill. App. 3d 959, 962, 318 N.E.2d 149, 152; *Koplin v. Saul Lerner Co.* (1964), 52 Ill. App. 2d 97, 201 N.E.2d 763.

Plaintiff points to the following facts to support his claim that Cunard has transacted business in Illinois: Cunard employs Visser and Manczak, who are Illinois residents, to promote, in Illinois, travel on Cunard ships. Cunard pays for telephones for Visser and Manczak. Cunard permitted Great Lakes Transit to list itself in the telephone directory as agent for Cunard. Plaintiff received his Cunard "Passage Contract Ticket" in Northbrook, Illinois. Cunard advertises in Illinois newspapers and national publications which are circulated to Illinois residents. And Cunard mailed questionnaires and newsletters to Illinois promoting fly/cruise/resort tour packages. Plaintiff claims that Cunard committed a

"tortious act" in Illinois, as alleged in his count II, through negligent misrepresentation about the safety of the beach prior to plaintiff's contracting for the tour.

■■■ It is clear that plaintiff was injured not in Illinois, but in the West Indies on the island of St. Lucia. It is established through the affidavits of Cunard and GWV, taken as true because not contradicted by plaintiff (*Central Clearing, Inc. v. Omega Industries, Inc.* (1976), 42 Ill. App. 3d 1025, 356 N.E.2d 852), that Cunard is a separate corporate entity from LaToc Holdings, Ltd., a corporation which owns and operates the hotel and beach facilities where plaintiff was injured. While both Cunard and LaToc Holdings, Ltd., are owned by the same parent company, this does not make Cunard liable for the acts of the other subsidiary. (*Flight Kitchen, Inc. v. Chicago Seven-Up Bottling Co.* (1974), 22 Ill. App. 3d 558, 317 N.E.2d 663.) Furthermore, the use of the name "Cunard" by not only defendant Cunard Line Ltd. but also by other subsidiaries of the parent company for advertising purposes, while it might lead to confusion in the minds of the public as noted by the trial court, does not make Cunard liable for the torts of the other subsidiary. In no sense was the use of the name "Cunard" on the advertisement seen by plaintiff or in the letter sent by the manager of LaToc (after plaintiff's injury) a cause of the injury suffered by plaintiff. (*Connelly v. Uniroyal, Inc.* (1977), 55 Ill. App. 3d 530, 370 N.E.2d 1189.) Therefore, also taking as true, because uncontradicted, the statements by Cunard that it has no responsibility, control over or authority to control or maintain the beach where plaintiff was injured, there could be no duty of Cunard to maintain the beach or warn plaintiff of its dangerous condition. In the absence of a duty, the breach of which proximately caused plaintiff's injury (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307), there can be no liability of Cunard for negligence as alleged in count I.

Plaintiff cites *Bania v. Royal Lahaina Hotel* (1975), 37 Ill. App. 3d 661, 347 N.E.2d 106, in support of his argument that Cunard had sufficient contacts with Illinois to be subject to jurisdiction as having done business here. But the facts of that decision reveal that the plaintiff was told by the out-of-State defendant to bring her claim against it through its insurance company. This court was of the opinion that, under those facts, the defendant had consented to personal jurisdiction in the Illinois courts. In the case at bar, there is no allegation of any consenting statements by Cunard.

■■ Plaintiff also relies on *Kogan v. Longstreet* (N.D. Ill. 1974), 374 F. Supp. 47, as authority for his argument that Cunard's contacts are sufficient to constitute "the transaction of business" within the meaning of section 17(1)(a). In that case, plaintiffs sued defendant Longstreet and his

publisher David McKay Company, Inc., for copyright infringement. The court found that the publisher was doing business in Illinois through a continuous course of conduct which included the shipment of goods and the solicitation of business in Illinois. It is significant that the defendant publisher sold "numerous" copies of the book, which allegedly infringed on the plaintiff's copyright, in Illinois. Thus, the defendant reaped a benefit in Illinois from its alleged infringement, and the requirements of section 17(3) were satisfied. Here, the activities of Cunard in advertising and in having Illinois employees promote travel on Cunard through contacts with Illinois travel agents does not amount to the "transaction of business," because the Cunard employees were not authorized to, and did not, contract with anyone in Illinois. Further, plaintiff's negligence count cannot be factually related to any activities of Cunard or its employees in Illinois, as required by section 17(3) in order to base *in personam* jurisdiction on one of the grounds enumerated in section 17(1). *Process Church of Final Judgment v. Sanders* (N.E. Ill. 1972), 338 F. Supp. 1396.

Plaintiff argues further that jurisdiction attaches under section 17(1)(b) because Cunard committed a "tortious act" in Illinois by its negligent misrepresentation, pleaded as a cause of action in count II of the complaint. We disagree. While negligent misrepresentation has been recognized as a cause of action in Illinois (*Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656; *McAfee v. Rockford Coca-Cola Bottling Co.* (1976), 40 Ill. App. 3d 521, 352 N.E.2d 50), plaintiff's pleadings, exhibits and affidavit do not reveal that he has such a cause of action against Cunard. The complaint pleads, without specificity, that "Defendants, and each of them, represented that the beach and ocean facilities were safe and fit for wading or swimming." Cunard's affidavits denied that any representations were made at all about the beach. Plaintiff, in response, filed his exhibits and affidavit. The only mention of the condition of the beach in all of the exhibits is the phrase in Exhibit 4 that "LaToc * * * has one of the best beaches in St. Lucia." (This is the same exhibit which states that LaToc Holdings Ltd. and Cunard are separate corporate subsidiaries of Trafalgar House Investments, Ltd.) Plaintiff's affidavit states, pertinently, only that he received "brochures and maps describing the hotel and beach facilities at Cunard's resort hotel, LaToc" and "Cunard's hotel manager and other employees continually represented to [plaintiff] and his wife that the beach was safe for wading and swimming." Though unclear, it is inferable from the context that plaintiff received the brochures and maps before he purchased the tour.

■■ There has been no showing of any representation by Cunard concerning the condition of the beach where plaintiff was injured. Had Cunard been responsible for the brochure which praises the beach as

"one of the best" (a fact which Cunard denies in its affidavit), that does not constitute any representation that the beach was safe for swimming or wading. And it is unrefuted that the hotel manager and the other hotel employees were not employees or agents of Cunard, but rather were employed by LaToc Holdings, Ltd. Their statements cannot be imputed to this defendant.

Furthermore, since the only specifically alleged misrepresentations made, those by the hotel manager and "other employees," took place on the island of St. Lucia, W. I., the tortious acts did not take place in Illinois, because "* * * the place of a wrong is where the last event takes place which is necessary to render the actor liable." (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 435, 176 N.E.2d 761, 762.) Since the words were spoken at St. Lucia and plaintiff was injured at St. Lucia, the place of the tortious act was St. Lucia.

Even the expanded definition given to the words "tortious act" in *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 367 N.E.2d 118, does not aid plaintiff. In that case, the allegedly defective airplane at least had been present in Illinois for some time prior to the crash, and took off from Illinois on the flight which ended in the crash which killed plaintiff's decedents, all Illinois residents. Here, Cunard's ship was never in Illinois and it is obvious that the hotel and beach were never in Illinois.

We agree with the trial court that defendant Cunard neither transacted business in Illinois which gave rise to plaintiff's negligence claim, nor committed a tortious act in Illinois which gave rise to plaintiff's negligent misrepresentation claim. The order of the circuit court of Cook County quashing service of summons and dismissing Cunard as a party defendant is therefore affirmed.

Judgment affirmed.

McGLOON and BUCKLEY, JJ., concur.