**Cleavone WALKER, Plaintiff,**

v.

**CARNIVAL CRUISE LINES, INC., a corporation, Defendant.**

**No. 87 C 115.**

United States District Court,
N.D. Illinois, E.D.

Nov. 3, 1987.

Stephen J. McMullen, John J. Henely, Ltd., Chicago, Ill., for plaintiff.

Theodore C. Robinson, John P. Naniatis, Ray, Robinson, Hanninen & Carle, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This diversity tort case is before us on motion of defendant Carnival Cruise Lines, Inc. ("Carnival"). Carnival moves for dismissal for lack of personal jurisdiction, Federal Rule of Civil Procedure Rule

12(b)(2) and improper venue, Rule 12(b)(3).[1] In the alternative, Carnival argues that the case should be transferred to the United States District Court for the Southern District of Florida, Miami Division, under the provisions of 28 U.S.C. § 1406(a).[2]

For the reasons outlined below, we deny the motion to dismiss for lack of personal jurisdiction. We deny the motion to dismiss for improper venue. The motion to transfer under 28 U.S.C. § 1406(a) is denied. Counsel are directed to appear for oral argument on whether transfer under 28 U.S.C. § 1404(a) would be in the interests of justice.

FACTS

Carnival is a Panamanian corporation with its principal place of business in Miami, Florida. Plaintiff Cleavone Walker ("Walker"), a citizen and resident of Illinois, booked passage on the T.S.S. Carnivale, a cruise ship operated by defendant Carnival. The Carnivale operates in the territorial waters of the United States of America, off the coast of Florida. Plaintiff alleges that on August 20, 1986, she fell and suffered a personal injury on board the Carnivale, caused by defendant's negligent maintenance of a stairway.

We now turn to the facts concerning Carnival's contacts with the State of Illinois. Carnival employs only one employee in the state. This person does not have direct contact with the public. Rather,

> the sole authority and function of this individual is to contact travel agents to promote the ocean cruises offered by Carnival. She has ... no authority to

nor does she book any cruise reservations. Travel agents desiring to contact the Carnival employee in Chicago cannot telephone her directly but must telephone Carnival's service representative in Miami and leave a message requesting a call. The Carnival employee in Chicago telephones the service representative in Miami periodically to obtain the telephone numbers of travel agents wishing to make contact with her.

Affidavit of Jack J. Stein (Manager of Claims of Carnival) ("Stein Affidavit"), Exhibit A to Plaintiff's Memorandum in Response to Defendant's Motion for Judgment on the Pleadings (hereinafter "Plaintiff's Response") at 3.

In her own affidavit, Cleavone Walker states that prior to August 1986 she had "seen numerous television commercials in my Chicago home advertising Carnival" and that she had seen and looked at written brochures advertising Carnival Cruise Lines on display shelves in Chicago-area travel agencies. Plaintiff's Response at Exhibit B. However, Walker admits that prior to her cruise she never dealt with or paid any money to Carnival. Rather, she dealt with Aaabco Cruise Center ("Aaabco") in Miami, Florida. *Id.* Aaabco is one of many independent travel agencies through which Carnival transacts its cruise business. Carnival deals only with travel agencies, some of which are in Illinois, until the passenger begins the journey. Stein Affidavit at 3.

After Walker purchased her ticket from Aaabco, Carnival sent her a ticket and bro-

---

**1.** We treat Carnival's motion as requesting dismissal under Rule 12(b), even though Carnival styled its motion as being for judgment on the pleadings, Rule 12(c). A Rule 12(c) motion is an inappropriate vehicle for preliminary matters such as jurisdiction or venue, being ordinarily used for judgments on the merits of a complaint. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1369, at 698 (1969). There is no prejudice to plaintiff, as defendant properly preserved its objections to jurisdiction and venue. Answer at 3.

**2.** Carnival also suggests that plaintiff's counsel committed a "clear violation of Fed.R.Civ.P. 11," Memorandum of Defendant Carnival Cruise Lines, Inc. in Reply to Memorandum of Plaintiff in Response to Defendant's Motion for Judgment on the Pleadings at 2. Walker's counsel's alleged error was a failure to intuit or discover that the telephone number listed in the Chicago telephone book beside the name "Carnivale Cruise America" (see Memorandum of Plaintiff in Response to Defendant's Motion for Judgment on the Pleadings at Exhibit D) belongs to "an enterprising travel agency in Hialeh, Florida" rather than to the defendant.

Treating this statement as a motion for imposition of Rule 11 sanctions, the motion is denied. In the absence of any indication to the contrary, it was reasonable for plaintiff's counsel to assume that the number was associated with defendant.

chure. If Carnival followed its customary procedure, these were sent in care of Walker's travel agency. *Id.* Whatever the means of delivery, Walker did receive a ticket with 25 numbered paragraphs of terms and conditions of passage printed in small but legible type over three ticket-sized pages. Paragraph eight of the passage contract states

> It is agreed by and between the passenger and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country.

Stein Affidavit at 3 (numbered "Contract Page 1"). Aaabco also sent Walker a Carnival "Welcome Aboard" brochure which contained a prominent statement on page nine, under the headline "Passage Contract":

> If you look at the back of your ticket, you'll see Conditions of Carriage of Passengers. We'd like to draw your attention to this part of the ticket. It's helpful to read this and become acquainted with the specific conditions and liabilities of your passage.

*Id.,* Exhibit 3 at 9.

## DISCUSSION

Defendant has moved for dismissal for lack of jurisdiction and improper venue. In deciding these motions we consider the factual base provided by the materially uncontested affidavits offered by both sides.

### Jurisdiction

Plaintiff argues that the contacts between Carnival and Illinois suffice to give this court jurisdiction over Carnival under the Illinois Long–Arm statute, Ill.Rev.Stat. ch. 110, § 2–209 (hereinafter § 2–209), and under the "doing business doctrine." Plaintiff's Response at 2–8.

■ In a diversity action such as this one, this court has jurisdiction if and only if an Illinois court would have it. *Young v. Colgate–Palmolive Co.,* 790 F.2d 567, 569 (7th Cir.1986). Defendant's motions present us with a two-step inquiry. First, we must determine whether there is any theory under which the Illinois courts would hold that they have jurisdiction. If not, that ends the matter; if there is jurisdiction, we must then see whether venue is proper, and if it is not we must dismiss or transfer the case. The jurisdictional question requires that we examine both § 2–209 and the "doing business" rule, while remaining mindful of the constitutional limits imposed by the Due Process clause. The venue question turns in large part on whether the forum-selection terms of the Carnival–Walker contract are enforceable.

### Jurisdiction under Section 2–209

■ Illinois' long-arm statute, § 2–209, gives its courts jurisdiction over "any cause of action arising from ... (1) The transaction of any business within this State." [3] In order for this "transaction of business" to give rise to long-arm jurisdiction the cause of action must "arise from" the conduct giving rise to jurisdiction. *Chicago Silver Exchange v. United Refinery, Inc.,* 394 F.Supp. 1332 (N.D.Ill.1975); *Clements v. Barney's Sporting Goods Store,* 84 Ill.App.3d 600, 40 Ill.Dec. 342, 406 N.E.2d 43 (1st Dist.1980).

■ Although at one time the Illinois courts interpreted the state's long-arm statute to be coterminous with the limits imposed by the Constitution's Due Process Clause, *see, e.g., Biltmoor Moving and Storage Co. v. Shell Oil Co.,* 606 F.2d 202 (7th Cir.1979); *Wiedemann v. Cunard Line Ltd.,* 63 Ill.App.3d 1023, 20 Ill.Dec. 723, 380 N.E.2d 932 (1st Dist.1978), the Illinois courts now use a more restrictive approach. *See Young v. Colgate–Palmolive Co.,* 790 F.2d 567, 569 (7th Cir.1986); *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981). *But see Capital Assocs. De-*

---

**3.** Section 2–209(a)(2) grants jurisdiction over any cause of action arising from "[t]he commission of a tortious act within this state." Since it cannot seriously be maintained that the tort complained of occurred anywhere other than Florida, § 2–209(a)(1) is the only source of statutory long-arm jurisdiction.

*velopment Corp. v. James E. Roberts–Ohbayashi Corp.*, 138 Ill.App.3d 1031, 93 Ill. Dec. 563, 487 N.E.2d 7 (1st Dist.1985). The Illinois courts appear to be striving for a "fixed" interpretation of § 2–209, one not subject to the perceived vagaries of shifting interpretations of due process.[4] *City of East Moline v. Bracke, Hayes & Miller*, 133 Ill.App.3d 136, 88 Ill.Dec. 322, 478 N.E. 2d 637 (3d Dist.1985). *See generally* Comment, *Long Arm Jurisdiction: Implications of a "Fixed Meaning,"* 32 DePaul L.Rev. 635 (1983).

▪ Of the various matters described in plaintiff's briefs, the only acts of Carnival upon which § 2–209 jurisdiction could be founded are its advertising via television and other media, and its distribution of brochures to Chicago-area travel agencies.[5] Plaintiff states that she had "seen" Carnival's T.V. and print advertising, Plaintiff's Response at Exhibit B, ¶¶ 2–3, advertising which promoted the "Fun Ships" of the "Most Popular Cruise Line in the World." *See, e.g.*, Plaintiff's Response at Exhibit C. Plaintiff argues that Carnival's advertising and publicity activities began the chain of events which led her to book a cruise with Carnival, Plaintiff's Response at 4, a booking but for which she would not have had her accident.

▪ The two related issues before this court in the § 2–209 context are whether these acts of Carnival in Illinois rise to the level of "transaction of business," and whether the nexus between these acts and the plaintiff's injury is sufficiently strong so that a tort alleged to have occurred on a Florida cruise ship could fairly be said to "lie in the[ir] wake." *Jacobs/Kahan & Co. v. March*, 740 F.2d 587, 591 (7th Cir.1984); *Morton v. Environmental Land Systems Ltd.*, 55 Ill.App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1st Dist.1977). Both parties have cited a number of cases from Illinois

and from neighboring jurisdictions. They have succeeded in convincing us that the cases here and elsewhere are split, and that the Illinois Supreme Court has yet to clarify the "fixed meaning" of § 2–209.

In particular, defendant cites *Wiedemann v. Cunard Line Ltd.*, 63 Ill.App.3d 1023, 1032, 20 Ill.Dec. 723, 380 N.E.2d 932 (1st Dist.1978). The facts of *Wiedemann* appear to be very similar to those presented here. In *Wiedemann*, Cunard's Illinois employees were not authorized to contract with anyone in the state. The Illinois Appellate Court held that Cunard's advertising, and the promotion of its services by two of its employees, did not rise to the "transaction of business" in Illinois "because the Cunard employees were not authorized to, and did not, contract with anyone in Illinois." 380 N.E.2d at 939.

Plaintiff's most apposite citation is *Morton v. Environmental Land Systems, Ltd.*, 55 Ill.App.3d 369, 13 Ill.Dec. 79, 370 N.E.2d 1106 (1st Dist.1977). There the court stated

> In the assessment of a non-resident's contacts with the forum, it has been established that the physical presence of the defendant or his agent is not needed, and that a single transaction of business rather than a prolonged series of transactions can be sufficient. Moreover, a defendant enjoys the benefits and protection of the laws of the forum where he avails himself of the privilege of conducting activities there, and activities such as the solicitation of a contract is the transaction of business within the statutory definition even when the actual acceptance of the contract occurred outside of the forum and where it was to be governed by non-forum law. (citations omitted)

---

**4.** As a consequence of this, and because we believe that the Illinois courts' view of their jurisdiction lies inside of the constitutionally-prescribed maximum, any assertion of jurisdiction which falls within what the Illinois courts permit necessarily falls within the Due Process Clause.

**5.** We find Carnival's employment of a publicity person who dealt only with travel agents too remote for the effects of her labors to be connected with Walker's decision to purchase a Carnival cruise, much less with her actual injury. However, this employee is relevant to the question, considered *infra*, whether Carnival was "doing business" in Illinois.

13 Ill.Dec. at 82–83, 370 N.E.2d at 1109–10. Further, "[w]here the jurisdictional activities consist of the solicitation of sales, a cause of action arising from the consequences of such a sale comes within the statutory definition of [the predecessor of § 2–209]." *Id.* 13 Ill.Dec. at 83, 370 N.E.2d at 1110. Although there was some dispute in *Morton* as to whether the defendants had actually been physically present in Illinois when they conducted the solicitations, *see id.* 13 Ill.Dec. at 81–82, 370 N.E.2d at 1108–09, it is clear from the passages quoted above that the Appellate Court did not require physical presence of the solicitor to find sufficient contacts for the exercise of long-arm jurisdiction, at least in circumstances where it was clear that the solicitor (wherever he may have been) knew that the recipient of the solicitation would receive it in Illinois. We agree with the reasoning in *Morton.* Although *Morton* and the cases it canvassed deal with one-on-one solicitations, either in person, by mail, or by telephone, its logic seems equally applicable to a case where the solicitation took place via television and newspapers. Neither the defendant's ability to avail itself of economies of scale, nor its decision to advertise via the media rather than through a mass mailing, should allow it to escape from the jurisdiction which follows from more traditional solicitations.[6] We hold that jurisdiction exists under § 2–209.

*"Doing Business" in Illinois*

We reach the same result under the nonstatutory "doing business" standard for jurisdiction.

Illinois courts have long held that a nonresident defendant may effectively consent to be sued in the state by virtue of doing business here. *Connolly v. Samuelson,* 613 F.Supp. 109, 111 (N.D.Ill.1985); *Cook Assoc., Inc. v. Lexington United Corp.,* 87 Ill.2d 190, 199–203, 57 Ill.Dec. 730, 734, 429 N.E.2d 847, 851 (1981). Jurisdiction under the "doing business" theory requires more substantial and continuous contacts than the minimum required for long-arm jurisdiction; however, unlike in a § 2–209 determination, the acts which amount to "doing business" need not be causally linked to the plaintiff's cause of action.

■ Illinois law provides no clear guide as to what sort of act or presence suffices to create jurisdiction. The cases are largely fact-bound. *See In re Oil Spill by "Amoco Cadiz" off Coast of France,* 491 F.Supp. 170 (N.D.Ill.1979). Jurisdiction exists if the defendant's contacts with the state are ongoing, continuous, and of a substantial nature. *Aigner v. Bell Helicopters, Inc.,* 86 F.R.D. 532 (N.D.Ill.1980). An important aspect of this inquiry is whether it would be fair to assume that the defendant's contacts with the forum were such that it could reasonably be expected to be forced to litigate here. *Connelly v. Uniroyal, Inc.,* 55 Ill.App.3d 530, 13 Ill. Dec. 162, 370 N.E.2d 1189 (1st Dist.1977), *aff'd in part, rev'd in part on other grounds* 75 Ill.2d 393, 27 Ill.Dec. 343, 389 N.E.2d 155, *cert. denied, appeal dismissed sub nom. Uniroyal Englebert Belgique v. Connelly,* 444 U.S. 1060, 100 S.Ct. 992, 62 L.Ed.2d 738 (1980).[7]

6. We note that at least one District Court thought otherwise:

It is not reasonable to require defendant Carnival to anticipate that, as a result of its advertising activities and operation with travel agencies in Kansas, it would be subject to suit in Kansas for a tort which occurred on its ship. See *Mulhern v. Holland America Cruises,* 393 F.Supp. [1298,] 1303 [ (D.N.H.1975) ]. Defendant Carnival did not engage in personal solicitation of Kansas residents. After receiving a response to an advertisement, Carnival did not deliver a product into Kansas. The ticket sent plaintiff was a contract for services which defendant intended to perform outside of the forum state. The advertising of pleasure cruises can hardly be equated with

introducing a product into the stream of commerce.
*Dirks v. Carnival Cruise Lines,* 642 F.Supp. 971, 975–76 (D.Kan.1986).

7. This inquiry is very similar to that mandated by the Due Process Clause.

Carnival's contacts with Illinois comfortably exceed the minimum required by the Due Process Clause. *See, e.g., Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano City,* — U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In *Asahi,* the Court re-emphasized certain fundamentals about in personam jurisdiction, notably that "[j]urisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a

We are left, again, with a simple question: can a corporation advertise regularly and extensively in Illinois, have an employee here who is responsible for promoting an out-of-state product, yet not be amenable to service of process for causes of action growing out of the out-of-state use of the product or service being advertised.

There is no question that Carnival should reasonably have expected that Illinois residents would buy tickets on its cruises; indeed that was why it purchased all that advertising. Thus, the lack of "fair warning" which animated the Supreme Court's decision that jurisdiction was absent in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) is not present here. We hold that Carnival is "doing business" in Illinois for jurisdictional purposes.

*Venue*

Finding that this court has jurisdiction does not end the matter; we must also decide where venue is proper. Defendant has moved for transfer to the U.S. District Court in Miami, Florida, under both § 1406(a) [8] and under the contractual venue provision. The validity of the contractual forum-selection clause in this diversity case is a question of Illinois law; which law to apply when deciding whether to enforce the parties' forum choice is less clear. The Eleventh Circuit has held that federal law controls. *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir.) (en

banc), *cert. granted*, —— U.S. ——, 108 S.Ct. 225, 98 L.Ed.2d 184 (1987). The Supreme Court recently agreed to hear arguments on whether the enforcement of a forum-selection clause in such a diversity case should turn on state or federal law. 56 U.S.L.W. 1056 (1987).

As it happens, we would reach the same result whether we decided the enforceability of the forum-selection clause under state or federal law, because the Illinois courts have adopted a federal court ruling as their own. *See Calanca v. D & S Mfg. Co.*, 157 Ill.App.3d 85, 109 Ill.Dec. 400, 402–03, 510 N.E.2d 21, 23–24 (1st Dist.1987) (*citing Clinton v. Janger*, 583 F.Supp. 284 (N.D. Ill.1984)). Thus, in this case all venue questions can be treated as matters of federal law.

Dismissal under Rule 12(b)(3) is out of question, as venue is proper in Illinois because plaintiff resides here. 28 U.S.C. § 1391(a). Defendant's motion for transfer under 28 U.S.C. § 1406(a) must also be denied, as it is predicated on the initial venue having been improper.

Although the venue was not improper under 28 U.S.C. § 1391(a), this does not mean that we should ignore the parties' choice of forum, so long as that choice would be valid under state law. The procedural mechanism by which a federal court sitting in diversity gives effect to a forum-selection clause (if valid) is 28 U.S.C. § 1404(a). [9] *See* 15 C. Wright, A. Miller &

"substantial connection" with the forum State.' [*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184–85], *quoting McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 [78 S.Ct. 199, 201, 2 L.Ed.2d 223] ... (1957) (emphasis in original)." *Asahi*, 107 S.Ct. at 1031–32. The Court distinguished between cases, such as *Asahi* and *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), where the contact was due to some act of the plaintiff, and those in which "a corporation 'purposefully avails itself of the privilege of conducting activities within the forum State.' *Hanson v. Denckla*, 357 U.S. 235, 253 [78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283] ..." *Asahi*, 107 S.Ct. at 1031–32.
Carnival's advertising in Illinois, and the presence of a single agent, however lowly, suffice to establish "an action of the defendant purposefully directed toward the forum State." *Asahi*,

107 S.Ct. 1033, *citing Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. Indeed, advertising is one of the additional factors listed by the Supreme Court as indicating purpositive action towards a state. *Asahi*, 107 S.Ct. at 1033. *See also World–Wide Volkswagen*, 444 U.S. at 295, 100 S.Ct. at 566.

8. 28 U.S.C. § 1406(a) states:
The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought.

9. 28 U.S.C. § 1404(a) states
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

E. Cooper, *Federal Practice and Procedure* § 3803.1 at 27 (1986). A district court has considerable discretion under § 1404(a). *See generally id.* §§ 3846–3855.

 Ordinarily, a § 1404(a) determination concentrates on the location of parties, witnesses, the relative inconvenience of the fora, and the court's view of what "the interest of justice" requires. *Id.* We begin, therefore, as do most courts, with a presumption in favor of the plaintiff's choice of venue. *See, e.g., Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); C. Wright, A. Miller & E. Cooper, *supra*, § 3848. In other words, we begin by putting a heavy burden of persuasion on the movant. In the absence of unusual circumstances, this burden is satisfied if the movant can demonstrate that the parties have a valid prior agreement to litigate before another federal court which is able to take the case. If the movant can demonstrate that such a valid agreement exists, the burden of persuasion shifts to the respondent. Respondent would then have to demonstrate the existence of exceptional circumstances, such as hardship or particular inconvenience to a party or witnesses, which would make it unjust for us to transfer the case to the preselected forum. If, on the other hand, there is no valid agreement to litigate elsewhere, then the burden of persuasion remains with the movant to demonstrate the hardship or other injustice of allowing plaintiff to have the choice of forum which is her ordinary due.

 Because our determination of what will best serve the interests of justice in this case depends so much on whether there is a valid agreement to litigate in Florida, we turn now to the validity under Illinois law of the forum-selection clause in the Walker–Carnival passage contract.[10]

*Forum–Selection Clause*

The Illinois Appellate Court recently restated Illinois law on forum-selection clauses:

> A forum selection clause in a contract is *prima facia* valid and should be enforced unless the opposing party shows that enforcement would be unreasonable under the circumstances.... The opposing party must show ... [that] enforcement [will] contravene the strong public policy of the forum or the chosen forum must be *"seriously* inconvenient for the trial of the action"* (emphasis in original).
> ....
>
> In determining whether a forum selection clause is unreasonable, certain factors should be considered: (1) which law governs the formation and construction of the contract; (2) the residency of the parties involved; (3) the place of execution and/or performance of the contract; * * * (4) the location of the parties and witnesses participating in the litigation ...; (5) the inconvenience to the parties of any particular location; and (6) whether the clause was equally bargained for (citations omitted).

*Calanca v. D & S Mfg. Co.*, 157 Ill.App.3d 85, 109 Ill.Dec. 400, 402–03, 510 N.E.2d 21, 23–24 (1st Dist.1987), *quoting Clinton v. Janger*, 583 F.Supp. 284 (N.D.Ill.1984).

We note at the outset that neither of the parties has briefed the question of choice of law or of the relative convenience of the forums in any detail. For the reasons which follow, we believe that the plaintiff has yet to meet her burden of showing the unreasonableness of the forum-selection clause. *Calanca*, 109 Ill.Dec. at 403, 510 N.E.2d at 24.

Taking the six factors in turn:

1. Since the tort is alleged to have occurred in Florida, Florida tort law will presumably apply. This factor provides some support for transfer to Florida.

---

**10.** Plaintiff argues that the forum selection clause is inapplicable to this tort case because it refers to a contract. Plaintiff's Reply at 8. The plain language of the clause demonstrates that this argument has no merit: paragraph 8 refers to "all disputes and matters whatsoever arising under, in connection with or incident to this Contract." Plaintiff's Response at Exhibit E. If this language does not encompass a claim of negligence arising from the relationship created by the contract, it is difficult to imagine what language would.

2. Plaintiff is a resident of Illinois, defendant of Florida. Transfer to Florida would not be unreasonable on the basis of this factor.

3. The contract was executed either in Illinois or Florida, but was certainly performed in Florida, further supporting the reasonableness of transfer.

4. Although the parties have not briefed the question of the location of witnesses, we are informed that plaintiff's doctors are located in Illinois. Plaintiff's Reply at 1. Presumably, however, defendant's witnesses are mostly in Florida. Plaintiff has not alleged that changing venue to Florida would be unreasonably inconvenient for witnesses.

5. Clearly, both parties prefer to litigate in their home states. Plaintiff has not alleged, however, that trying the case in Florida would particularly inconvenient.

6. Plaintiff alleges that the forum-selection clause was not an equally-bargained for part of the contract. This allegation has merit. The forum-selection clause appears only in the actual ticket, not in any of the prebooking material made available to potential vacationers. Both Carnival and Walker agree that prior to the start of her trip, Walker's contacts were with Aaabco, not Carnival; further, neither party has suggested that passengers were furnished with the details of the passage contract until after the passenger had paid at least a deposit. It is not reasonable to assume that passengers would read their tickets and be so unhappy with the forum-choice clause that they would cancel their trips, if only because deposits were subject to cancellation charges unless the cancellation was at least 45 days before departure.[11] See Plaintiff's Response at Exhibit C at 39. By the time that a would-be vacationer receives the contract containing the clause, he or she has already paid at least a potentially nonrefundable deposit, if not the entire price of the trip.

Even though we believe that the forum-selection clause was not equally bargained for, whether this sixth factor weighs against enforcing the parties' choice of forum remains a close question. The matter is complicated by the existence of a substantial body of persuasive federal law on the formation of contracts for ocean voyages. *See DeNiCola v. Cunard Line Ltd.,* 642 F.2d 5, 7–10 (1st Cir.1981) (surveying cases from *The Majestic,* 166 U.S. 375, 17 S.Ct. 597, 41 L.Ed. 1039 (1897), to the present day). We presume that an Illinois court would find these cases relevant and persuasive. These cases suggest that the key element in assessing the validity of specific contractual terms in an ocean voyage passenger ship contract is not the bargaining at time of formation, but rather the conspicuousness with which the carrier gives notice of the actual terms and conditions of passage. *See Silvestri v. Italia Societa Per Azioni Di Navigazione,* 388 F.2d 11, 17 (2d Cir.1968) (Friendly, J.) (test is whether "steamship line had done all it reasonably could to warn the passenger that terms and conditions were important matters of contract affecting his legal rights").

Although the forum choice clause was not bargained for, we find that defendant did make reasonable efforts to alert the plaintiff to the existence of new terms and conditions. The face of the passenger ticket contains a small warning that the ticket is subject to conditions stated on subsequent pages. Stein Affidavit, Exhibit 1 at 1. Although the notice is small, it is legible and appears on the face of the actual passenger ticket, unobscured by surrounding print. *Cf. O'Connell v. Norwegian Caribbean Lines, Inc.,* 639 F.Supp. 846, 850–51 (N.D.Ill.1986) (Grady, C.J.) (warning appearing on portion of ticket labeled "NOT GOOD FOR PASSAGE," and printed in smaller typeface than surrounding print, fails to be reasonably conspicuous). The "Welcome Aboard" brochure also contains a prominent notice on page nine, directing passengers to read the terms of their passenger contract. Stein Affidavit at Exhibit 3 at 9. Other courts which have examined only slightly more conspicuous passage contracts have found them to give reason-

---

11. Carnival does warn passengers of this in its prebooking brochure, but this alone should not allow it carte blanche to impose whatever terms it wishes in the ultimate contract.

able notice; we find, and we presume that an Illinois court would find, that this contract more resembles contracts which meet the standard of reasonable notice than those which do not. *Compare, e.g., Silvestri, supra, and Catalana v. Carnival Cruise Lines, Inc.,* 618 F.Supp. 18, 22–24 (D.Md.1984) *with O'Connell,* 639 F.Supp. at 850–51.

Thus, we must decide whether reasonable notice to the passenger upon receipt of the ticket mitigates the unbargained-for nature of the passage contract, and if so, to what extent. We find, and presume that an Illinois court would find, the presence of reasonable notice to be partial mitigation of the unbargained for nature of the forum selection clause, and hold that this sixth factor neither supports reasonableness of transfer nor counsels against it.

■ The nature of the bargain, however, is but one of six factors which are to be weighed in the shadow of the presumption that forum choice clauses are valid. Based on the record as it now stands, and weighing all six factors, we find that plaintiff has not yet succeeded in overcoming the presumption in Illinois law that enforcement of a forum-selection clause would be reasonable. Thus, unless plaintiff produces affidavits which convince us that transfer would be unduly burdensome to a party, or to witnesses, or otherwise unjust, it would appear that this case is ripe for transfer under 28 U.S.C. § 1404(a). *Cf. Acceptance Co. of America v. Welchsler,* 489 F.Supp. 642, 649 (N.D.Ill.1980) (court may raise issue of transfer of venue *sua sponte* ). Counsel may submit affidavits regarding the location and mobility of witnesses and will be granted an opportunity for a brief oral argument on the issue of transfer under § 1404(a).[12]

## CONCLUSION

The motion to dismiss for lack of personal jurisdiction is denied. The motion to dismiss for improper venue is denied. The motion for transfer under 28 U.S.C. § 1406(a) is denied. Counsel are directed to appear for oral argument on December 2, 1987, at 4:00 p.m. to discuss transfer under 28 U.S.C. § 1404(a). Counsel should be prepared to discuss the issue of reasonableness of transfer, and especially any potential hardship.

---

**12.** Plaintiff requested a ten-minute oral argument to oppose defendant's motion to transfer under § 1406(a). As that motion is denied, an oral argument is unnecessary.