(No. 12681.—Judgment reversed.)

LILLIAN B. PEMBLETON, Appellee, *vs.* THE ILLINOIS COMMERCIAL MEN'S ASSOCIATION, Appellant.

*Opinion filed June 18, 1919—Rehearing denied October 10, 1919.*

1. JURISDICTION—*foreign judgment may be contradicted for the want of jurisdiction.* The record of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction either as to the subject matter or the person, and if it be shown that such facts did not exist the record will be a nullity, notwithstanding it may recite that they did exist.

2. CORPORATIONS—*what necessary to give court jurisdiction in personam over foreign corporation.* To give a court jurisdiction *in personam* over a foreign corporation it must appear that the corporation was carrying on its business in the State where process was served on its agent, that the business was transacted by some agent appointed by or representing the corporation in such State, and that there was a local law in the State making such corporation amenable to suit there as a condition of doing business in the State.

3. SAME—*when soliciting business in State will not render foreign corporation subject to its jurisdiction.* The mere solicitation of business in a State by policyholders of a foreign insurance corporation is not such "doing business" within the State as to render the corporation subject to the jurisdiction of the State by service of process on a policyholder engaged in such soliciting.

4. SAME—*what necessary to render statute making solicitors agents of insurance companies applicable to foreign corporation.* Before a statute making solicitors of insurance business agents of the companies whose policies they sell can be applied to a foreign corporation it must be shown that the corporation was doing such business in the State as to be subject to its jurisdiction and laws.

5. STARE DECISIS—*when Federal Supreme Court must be followed to extent of overruling former decisions of the State court.* Decisions as to due process of law under the fourteenth amendment to the Federal constitution must be controlled by the decisions of the Federal courts rather than by the decisions of State courts, and if necessary the State Supreme Court will overrule its former decisions in such matters and follow the rule laid down by the Federal Supreme Court.

APPEAL from the Circuit Court of Cook county; the Hon. GEORGE F. BARRETT, Judge, presiding.

RYAN, CONDON & LIVINGSTON, (JAMES G. CONDON, and IRVIN I. LIVINGSTON, of counsel,) for appellant.

MUSGRAVE, OPPENHEIM & LEE, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was an action of debt in the circuit court of Cook county, brought on a foreign judgment entered in Nebraska, by appellee against the Illinois Commercial Men's Association, an Illinois mutual assessment accident insurance company, in reference to payment of an insurance policy taken out by appellee's husband. On the hearing in the circuit court judgment was entered against appellant, and this appeal followed.

The foreign judgment was entered by default on September 23, 1916, in the district court of Nebraska. Service of process in the Nebraska court on the appellant association was attempted to be made by serving, at Omaha, H. S. Weller, a policyholder of said association. It was argued in the circuit court, as it is here, that the judgment was entered without jurisdiction having been lawfully obtained over the appellant association, and therefore without due process of law and in violation of the fourteenth amendment of the Federal constitution.

The alleged cause of action upon which judgment was recovered in Nebraska arose out of and was based on a contract of accident insurance entered into between appellant, an Illinois corporation, and George G. Pembleton, a resident of Nebraska. It appears from the evidence that appellant has its principal place of business in Chicago, and it is contended by its counsel that it conducted its business wholly in that city, largely by correspondence; that any male white person between the ages of nineteen and fifty-five years, engaged in certain occupations not of a hazardous nature, might make application for membership in said association; that such application was mailed to the office of the association located in Chicago; that the directors

of the association passed upon the statements contained in the application at the office in Chicago, and if the application was accepted a certificate of membership was issued to the applicant, being mailed to him from the office in Chicago or delivered to him personally at said office; that appellant had never engaged any agent or other person to give his time to representing it in seeking business in the State of Nebraska, or, for that matter, in any other State; that it never paid any person any sum as commission, fee or emolument for or on its behalf in securing applications for membership or collecting assessments in Nebraska; that it has never solicited insurance in Nebraska except through its own members; that it has not made any contracts in Nebraska, collected premiums or adjusted, settled and paid losses in Nebraska, or in any place except at the office of the association in Chicago; that it never had or maintained any office or agent for the transaction of business in Nebraska, or in any other place except Chicago; that its method of doing business is to receive applications from various States in the Union by mail; that its plan for securing these applications is, that when appellant forwards notices from Chicago to its members as to the payment of dues it encloses blank applications, with a request to the members to solicit others to make application and forward the sum of two dollars as a membership fee; that when these applications are so made through its members in various sections of the country, such applications, with the membership fee enclosed, are forwarded by mail and received in Chicago, and thereafter all notices of dues, with like requests for members to secure applicants, are forwarded by mail to the member at his home, and the dues are paid by the member sending the money through the mails to the Chicago office; that whenever an accident happens or a member dies and a claim is made against the association, if any question is raised by the association as to its liability an investigator or adjuster is sent to the place

where the accident or death occurred; that he makes his report to the board of directors at Chicago, and if a proposition of settlement is made by the claimant such proposition is reported to the board for action; that all transactions between the member and the association are conducted by mail, except in the case of an adjustment, which is carried on as just stated. It further appears that the application of deceased, George G. Pembleton, of Nebraska, was received in the same manner all other applications for membership were usually received; that he was recommended for membership by Phil S. Easterday, a member of the association, and was accepted by the board of directors at Chicago on September 15, 1906, upon which date the policy was issued at Chicago and deposited in the mails at Chicago, addressed to Pembleton at his home address. It appears from the record that Weller, upon whom service of process was made as to the litigation in Nebraska, was a member of the association; that he has never been an officer, employee or regularly constituted agent of such association and never received or became entitled to any compensation for what he did; that some time before this litigation was instituted Weller transmitted to the association the applications of two persons, viz., a Mr. Williams and a Mr. Reinhardt, along with the membership fee in each case; that these applications were accepted and acted upon by the association and the certificates of membership forwarded to Williams and Reinhardt, respectively; that before sending in these two applications Weller had received the application blanks urging the members to make use of the same to induce others to join the association; that Weller was a resident of Omaha, Nebraska, was president of two Nebraska assessment companies, with which he was actively engaged, and was also vice-president of a wholesale drug company in Omaha; that he maintained an office with the drug company, and had at the same place an office for the two Nebraska assessment companies but

was never a paid solicitor for any insurance company; that the two applications sent to appellant were made through him in April and July of 1916, respectively, and that the membership fee of two dollars in each case was remitted by him in the form of checks of the Richardson Drug Company, drawn by Weller as vice-president of that company.

It appears to be suggested that the provision of the Federal constitution requiring that full faith and credit shall be given in each State to the judicial proceedings of every other State, and the act of Congress passed in pursuance thereof, prevent an inquiry into the jurisdiction of the court by which the judgment offered in evidence was rendered. It has been held by the Federal courts that the record of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction, and if it be shown that such facts did not exist the record will be a nullity, notwithstanding it may recite that they did exist; that want of jurisdiction may be shown either as to the subject matter or the person. (*Thompson* v. *Whitman,* 18 Wall. 457; *Simmons* v. *Saul,* 138 U. S. 439; *National Exchange Bank* v. *Wiley,* 195 id. 257.) This court has laid down a similar rule that the courts of this State may inquire into the proceedings, judgments or decrees of a sister State to determine whether the court had jurisdiction of the subject matter or the parties. (*Field* v. *Field,* 215 Ill. 496; *Forsyth* v. *Barnes,* 228 id. 326.) It has also been settled by the Federal decisions that three conditions are necessary to give a court jurisdiction *in personam* over a foreign corporation: First, it must appear that the corporation was carrying on its business in the State where process was served on its agent; second, that the business was transacted or managed by some agent or officer appointed by or representing the corporation in such State; third, the existence of some local law making such corporation amenable to suit there as a condition, express or implied, of doing business in the State. (21 R. C. L. 1340;

*Connecticut Mutual Life Ins. Co.* v. *Spratley,* 172 U. S. 602; *Armstrong Co.* v. *New York Central and Hudson River Railroad Co.* (Minn.) Ann. Cas. 1916E, 335.) It is also established that in order to render a corporation amenable to service of process in a foreign jurisdiction it must appear that the corporation is transacting business in that district to such an extent as to subject it to the jurisdiction and laws thereof. *St. Clair* v. *Cox,* 106 U. S. 250; *Commercial Mutual Accident Co.* v. *Davis,* 213 id. 245, and cases there cited.

The courts have laid down no all-embracing rule by which it may be determined what constitutes the doing of business by a foreign corporation in such manner as to make it subject to jurisdiction. In general it may be said that the business must be of such a character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in which it is served and in which it is bound to appear when a proper agent has been served with process. (21 R. C. L. 1341; *Green* v. *Chicago, Burlington and Quincy Railway Co.* 205 U. S. 530; *St. Louis and Southwestern Railway Co.* v. *Alexander,* 227 id. 218.) The transaction of business must be such that the corporation is for the time being within the State in which it is sued. (*Armstrong Co.* v. *New York Central and Hudson River Railroad Co. supra.*) The general rule is, that the mere solicitation of business by agents of a foreign corporation is not such "doing business" within the State as to subject the foreign corporation to the jurisdiction of the courts of the State in which the business is solicited. The tendency of the courts, however, in recent years, seems to be toward considering agents engaged in soliciting business as the representatives of the corporation for the purpose of the service of process. (21 R. C. L. 1342.) The rule has been laid down by the United States Supreme Court that where there is a continuous course of business in the State by the solicitation of orders which are

sent to another State, in response to which the subject matter thereof is delivered in the State where the order was taken and payment is received therein by money, notes or checks, this constitutes doing business in such State, rendering the corporation subject to the process of its courts. (*International Harvester Co.* v. *Kentucky,* 234 U. S. 579.) But so far as we are advised the Federal courts have never laid down the rule that the mere solicitation of business by agents of a foreign corporation within the State was the doing of business in that State. Many decisions hold that the taking of orders for goods in a State by an ordinary agent or salesman is not doing business therein, where orders so taken are forwarded to the corporation at its domicile for its acceptance and the goods are sent directly to the purchasers. (12 R. C. L. 76.)

Counsel for appellee rely particularly, in support of their contention that the solicitation of business as is here shown in the State of Nebraska was the doing of business in that State, on *Connecticut Mutual Life Ins. Co.* v. *Spratley, supra,* and *Commercial Mutual Accident Co.* v. *Davis, supra.* Neither of these decisions, as we read them, holds to that effect. The principal holding in the first of these cases is to the effect that a foreign insurance company which has been doing business within a State through its agents does not cease to do business therein when it withdraws its agents and ceases to obtain or ask for new risks or obtain new policies while at the same time its old policies continue in force and the premiums thereon are paid by policyholders to an agent residing in another State who was once the agent in the State where the policyholders reside. The second decision of these two holds that an insurance company with outstanding policies in the State, on which it collects premiums and adjusts policies, must be held to be doing business within the State so as to render it liable to an action and service of process, according to the laws of the State, on a doctor sent by said insurance company to in-

vestigate the loss, the doctor having the power to adjust such loss.

The strongest case, perhaps, in favor of appellee's contention on this question is that of *International Harvester Co.* v. *Kentucky, supra.* In *Green* v. *Chicago, Burlington and Quincy Railway Co. supra,* the Supreme Court of the United States held that the mere solicitation of business in the State was not the doing of business in that State. (See, also, to the same effect, *People's Tobacco Co.* v. *American Tobacco Co.* 246 U. S. 79.) While the *Harvester Co. case, supra,* held that the *Green case* was an extreme case, it reaffirmed the doctrine laid down in the former decision that the mere solicitation of business was not the doing of business in the State, and continued (p. 587) : "In the case now under consideration there was something more than mere solicitation. In response to the orders received there was a continuous course of shipment of machines in Kentucky. There was authority to receive payment in money, check or draft and to take notes payable at banks in Kentucky." On the facts in that case and this they are clearly distinguishable. It seems to be conceded that there was no authority here to pay for the insurance in money, check or draft or take notes payable on banks in Nebraska. The only thing that the person soliciting insurance in this case could do was to forward the money, check or draft for premium with the application to the head office in Chicago for the approval of the appellant association. This court has discussed this question in *Booz* v. *Texas and Pacific Railway Co.* 250 Ill. 376, and there said (p. 381) : "The defendant, being a foreign corporation, could only be served in this State if it was doing business here, and no one could be an agent of the defendant unless he had power to represent it in the transaction of some part of the business contemplated by its charter. There was no one in this State who had power to make any contract or bind the defendant in any way, and the mere solicitation of business by

persons who have no other authority is not doing business within this State." The reasoning of this court in *Barnard* v. *Springfield and Northeastern Traction Co.* 274 Ill. 148, tends also to support the conclusion that the appellant was not doing business in Nebraska at the time this policy was taken out or when this litigation was instituted. See, also, *Berger* v. *Pacific Railroad Co.* 9 L. R. A. (N. S.) 1214, and authorities cited in note, and *Armstrong Co.* v. *New York Central and Hudson River Railroad Co.* L. R. A. 1916E, 232, and authorities cited in note.

Counsel for appellee insist that the reasoning of this court in *Firemen's Ins. Co.* v. *Thompson*, 155 Ill. 204, is directly in conflict with this conclusion. In that case an Illinois insurance company took a risk under a fire insurance policy in Wisconsin, and it was held that the company was doing business in Wisconsin so as to render it subject to the service of process in that State. It must be conceded that some of the reasoning in that case does tend to uphold the argument of counsel for appellee, but the facts in that case are somewhat different and on that account it might be held that the decision in that case is not necessarily controlling here. Furthermore, in that case the constitutional question as to due process of law does not seem to have been raised or passed upon by the court. Indeed, if the question had been raised it must have been held to be waived because the appeal in that case was taken from the trial court to the Appellate Court and then to this court. The decisions in this State as to due process of law under the fourteenth Federal amendment must be controlled by the decisions of the Federal courts rather than by the decisions of our own or other State courts. (*Old Wayne Mutual Life Ass'n* v. *McDonough*, 204 U. S. 8; *Thompson* v. *Whitman, supra; Forsyth* v. *Barnes, supra.*) The decisions of the United States Supreme Court heretofore cited conclusively hold that the mere solicitation of business, as shown by this record, was not such doing of busi-

ness in Nebraska as to render the company liable to service of process therein. It is our duty, under the law, to overrule, if necessary, even our own decisions and follow the rule laid down by the Federal Supreme Court in matters of this kind. *Rothschild & Co.* v. *Steger Piano Co.* 256 Ill. 196.

It is argued by counsel for appellee that the legislatures of this and other States have been compelled to enact statutes for the purpose of preventing insurance companies which issue policies upon property and lives from forcing the insured or beneficiaries to go to a foreign State, hundreds of miles from their homes, to enforce the contract; that it is apparent from this record that the appellant has made a studied attempt to exempt itself from liability in the courts of the States where the members live, where the applications are made and where the dues and losses are paid; that the statutes of this State forbid a foreign insurance company to transact any business in this State without first securing a license from the Auditor of Public Accounts, and that before receiving said license the company must stipulate that it will not remove any suit instituted against it into any United States court and that if it should do so then its license would be revoked; that every foreign life insurance company before doing business here must in writing appoint an attorney resident in the State, upon whom all lawful process against the company may be served with like effect as if the company had been created in the State, and that such power of attorney must stipulate that any lawful process against the company which is served on such attorney shall be of the same legal force and validity as if served on the company; that for the further purpose of protecting the insured in this State certain deposits must be made with the Auditor; that the record shows, also, that similar statutes have been enacted in the State of Nebraska. While we agree with counsel for appellee that to hold the service in Nebraska is invalid must cause a hardship to

appellee in this case, we feel constrained to rule, until the Supreme Court of the United States has ruled to the contrary, that we must follow the former decisions of that court, and hold that the mere solicitation of business such as shown by this record is not doing business in the State of Nebraska by appellant so as to justify such a service of process as is here shown upon appellant in the courts of Nebraska. The reasoning of the Federal court in *Tomlinson* v. *Iowa State Traveling Men's Ass'n*, 251 Fed. Rep. 171, is in point here. The court there said (p. 173): "It is true that it is less convenient, and probably more expensive, for the plaintiff to prosecute her action in Iowa, where valid service can readily be procured; nevertheless, this is one of the incidents of doing business with a foreign insurance company of the character of this defendant, which does business almost, if not quite, exclusively with commercial travelers, who live in widely separated localities. It may be doubted whether the burden imposed upon the entire membership of such an association, depending, as it does, entirely upon moderate assessments for the payment of losses, as a result of being compelled to defend, presumably, in every State of the Union, would not outweigh the physical and financial inconvenience of the individual beneficiary. However this may be, the law must be administered as it is found to apply, and the plaintiff is not left without her remedy, but may pursue it, if valid and subsisting, in the proper jurisdiction."

A statute has been enacted in Nebraska which reads: "Any person or firm in this State who shall receive or receipt for any money on account of or for any contract of insurance made by him or them, or for any such insurance company or individual aforesaid, or who shall receive or receipt for money from other persons to be transmitted to any such company or individual aforesaid for a policy or policies of insurance or any renewal thereof, although such policy or policies of insurance may not be signed by

him or them as agent or agents of such company, or who shall in anywise directly or indirectly make or cause to be made any contract or contracts of insurance for or on account of such company aforesaid, shall be deemed, to all intents and purposes, an agent or agents of such company and shall be subject and liable to all the provisions of this chapter." This statute has been held constitutional by the courts of that State. (*Taylor* v. *Illinois Commercial Men's Ass'n,* 84 Neb. 799; *Tomson* v. *Iowa State Traveling Men's Ass'n,* 88 id. 399.) The following decisions also, as argued by counsel for appellee, tend to support the constitutionality of this statute: *Iowa State Traveling Men's Ass'n* v. *Ruge,* 242 Fed. Rep. 762; *Cox* v. *Railway Conductors Co-operative Ass'n,* 194 Mich. 213; *Sadler* v. *Mobile Life Ins. Co.* 60 Miss. 391; see, also, 21 R. C. L. 1344, and cases there cited. In view, however, of the conclusion that we have reached on this record as to appellant not being shown to be transacting or doing business in Nebraska at the time of the service of process in this case or at the time the policy in this case was executed, it is unnecessary to discuss further the constitutionality of this Nebraska statute, for it has been repeatedly held that in order to make such a statute applicable to a foreign corporation in any State it must be shown that such corporation was doing business in that State. *Old Wayne Mutual Life Ass'n* v. *McDonough, supra; Frawley* v. *Pennsylvania Casualty Co.* 124 Fed. Rep. 259; *Commercial Mutual Accident Co.* v. *Davis, supra,* and cases there cited.

Having held that the appellant was not transacting or doing business in Nebraska so as to authorize the service of process on its members in that State it is unnecessary to pass upon the other questions raised in the briefs.

For the reasons stated there can be no recovery, and the judgment of the circuit court will be reversed.

*Judgment reversed.*