Steve O. ROGERS and Mildred C. Rogers, Plaintiffs,

v.

Dr. William FURLOW, Dr. Knoll, Dr. Wilson, Mayo Clinic and Rochester Methodist Hospital, Defendants.

No. 87–C–20240.

United States District Court, N.D. Illinois, W.D.

Nov. 1, 1988.

Scott M. Boyd, Rockford, Ill., Richard A. Heilprin, Thomas H. Strakeljahn, Heilprin & Strakeljahn, S.C., Madison, Wis., for plaintiffs.

William J. White, Lord, Bissell & Brook, Chicago, Ill., David P. Faulkner, Lord, Bissell & Brook, Rockford, Ill., for Mayo Foundation, Rochester Methodist Hosp., William L. Furlow, M.D. and Dean Knoll, M.D.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the defendants' motion to dismiss for lack of *in personam* jurisdiction. For the reasons set forth below, the court grants the defendants' motion.

## NATURE OF THE CASE

The present controversy revolves around an "independent medical exam" performed on the plaintiff Steve O. Rogers as part of pre-trial discovery in a separate product liability suit filed by Rogers in U.S. District Court for the Western District of Wisconsin.

In 1978, the plaintiff underwent a surgical procedure implanting an inflatable prosthetic penile implant manufactured by American Medical Systems, Inc. ("AMS"). Subsequently, Mr. Rogers experienced problems with the implant that resulted in him filing a product liability and malpractice suit in the Western District of Wisconsin against AMS and the implanting physician, respectively. As part of this prior lawsuit, defense counsel for AMS desired to subject Rogers to an "independent medical exam" by Dr. Furlow and his associates at the Mayo Clinic. After some wrangling, the parties scheduled the "independent examination" with Dr. Furlow at the Mayo Clinic. Drs. Furlow, Knoll and Wilson examined the plaintiff and surgically reimplanted a new prosthetic penile implant into Roger's penis. The reimplantation and a pre-operative x-ray occurred at Rochester Methodist Hospital and at all relevent times, the doctors, Furlow, Wilson and Knoll, were allegedly agents of the defendant Mayo Clinic. The plaintiff now brings a medical malpractice action against Rochester Methodist Hospital, the Mayo Clinic, Dr. Furlow, Dr. Knoll and Dr. Wilson. In addition, Steve Roger's spouse, Mildred C. Rogers, sues the defendants for loss of consortium.

The plaintiffs allege diversity of citizenship as the basis for the court's jurisdiction and have performed extraterritorial service on all the aforementioned defendants, except Dr. Wilson, who has not been served. Presently, the defendants move the court pursuant to Rule 12(b)(2) to dismiss the complaint for want of the court's personal jurisdiction over the defendants.[1]

---

1. The defendants also move to strike certain portions of the plaintiffs' Statement of Uncontested Jurisdictional Facts and Statement of Uncontested Facts. The defendants dispute much of what the plaintiffs assert. Rather than strike the disputed facts, the court merely notes the specified "facts" are not undisputed and will weigh them accordingly.

## DISCUSSION

Once the defendants move for dismissal based on lack of jurisdiction the burden is on the plaintiffs to provide sufficient evidence to support jurisdiction. *Connolly v. Samuelson,* 613 F.Supp. 109, 110 (N.D.Ill. 1985). Naturally, the court may consider affidavits and other relevant evidentiary materials in passing on such a motion to dismiss. *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1176 (7th Cir. 1971).

A federal court has jurisdiction over a diversity suit if a court of the forum state (in this case, Illinois) would have jurisdiction over the defendants if the suit were brought there. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596, 598 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). Essentially, an Illinois court may exercise *in personam* jurisdiction over a non-resident defendant if the defendant "does business" in Illinois or has performed an act enumerated in the Illinois Long Arm Statute, ch. 110 Ill.Rev.Stat. § 2–209 (West Supp.1988). In either case, the court must also find that the non-resident's constitutional right to due process is not impinged by the court's exercise of personal jurisdiction over him or her. *See International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

In the case at bar, the plaintiffs offer a variety of arguments to support the court's personal jurisdiction over the defendants. The plaintiffs justify jurisdiction based on both the Illinois Long Arm Statute and the "doing business" standard. Furthermore, the plaintiffs offer various rationales for each of the two jurisdictional bases. The court will attempt to fully address all the plaintiffs' justifications separately and completely and, if necessary, explore the constitutional ramifications of exercising jurisdiction over the defendants.

## I. Illinois Long Arm Statute.

The Illinois Long Arm Statute provides in relevant part:

Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such a person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the day of any such act:

(1) The transaction of any business within the State;

(2) The commission of a tortious act within the State.

\* \* \* \* \* \*

Ch. 110 Ill.Rev.Stat. ¶ 2–209 (West Supp. 1988).

The plaintiffs allege that the defendants committed a tortious act in the State of Illinois. The plaintiffs explain that the defendants "solicited" Mr. Rogers to attend the "negligent" "independent examination" that eventually led to the "negligent" reimplantation of an inflatable penile prosthesis. The plaintiff first maintains that the "solicitation" itself was a tortious act committed in the State of Illinois and, second, that the "solicitation" was the first act of a continuum of tort activity that culminated in the "negligent" "independent examination" and "negligent" reimplantation of an inflatable penile prosthesis.

### (a) *The Tortious Letter*

▮ The court is unpersuaded by the plaintiffs' characterization of the Mayo Clinic's November 20, 1986 letter to Steve Rogers as a "tortious act" or "tort." The plaintiffs argue that the appointment confirmation letter[2] was tortious since the Mayo Clinic and Dr. Furlow failed to send a copy of the letter to Steve Roger's attorney, Thomas Strakeljahn. The plaintiffs

---

**2.** The November 20, 1986 letter reads (in pertinent part) as follows:

Dear Mr. Rogers:

We are happy to inform you that we have been able to reschedule your appointment with Dr. W.T. Furlow as requested. The new appointment date is Tuesday, January 6. We hope this is satisfactory. The enclosed admission card is to be presented as indicated. If we can be of further assistance, please let us know.

explain that this ommission is tortious since it contravenes unspecified federal rules and ethics codes. The court rejects this argument for a myriad of reasons.

First, the plaintiffs cite no authority, not one statute, regulation or case, that proposes the existence of a tort for a non-party doctor's failure to send a copy of an appointment confirmation letter to a patient's attorney. The plaintiffs argue that Dr. Furlow was an "expert witness" for AMS and thus an agent of the manufacturer's attorney. Even if this is true and even assuming such a tort exists, the violation of ethical or procedural rules by the agent doctor would make his master, the attorney, liable not the agent. Additionally, the court is at loss to justify labeling a doctor a tortfeasor for allegedly breaching an attorney ethics code or a federal court's rules of procedure. Furthermore, the court fails to see how a violation of a federal rule of procedure produces a state common law tort.

### (b) *"Continuum of Tort"*

■ Next, the plaintiff contends that the November 20, 1986, "confirmation" letter is not a separate tort but the first link in a "continuum of tortious activity." The plaintiffs explain that the letter was the calculated genesis of the series of events that led to the "negligent" examination, pre-operative work-up and surgery.

Again, the court refuses to adopt the plaintiffs' reasoning. It is well settled that a tortious act occurs where the last event takes place which is necessary to render the actor liable. *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 435, 176 N.E.2d 761, 762–63 (1961). If, as held above, the receipt of the letter was not a tortious act in itself and the plaintiff otherwise complains only of actions that occurred in Minnesota, as is the case, then all the "tortious acts" occurred in Minnesota.

Moreover, the court is aware of persuasive legal precedent implicitly rejecting "continuum of tort" theories. These courts found that correspondence to the forum state is not considered part of a tortious act for purposes of a long arm statute when the negligent act or injury occurred in another state. This is true even if these letters eventually led to a tortious act. *See Wiedemann v. Cunard Line Limits*, 63 Ill.App.3d 1023, 380 N.E.2d 932, 20 Ill.Dec. 723 (1st Dist.1978) (Illinois traveler injured in West Indies sued tour operator in Illinois). *Stansell v. International Fellowship, Inc.*, 22 Ill.App.3d 959, 318 N.E.2d 149 (1st Dist.1974). (Illinois decedent killed in Peru sued president of association which arranged trip.) *Connolly, supra,* (Illinois plaintiff injured in South Africa sues Kansas planner for negligently planning the trip).

Furthermore, the court finds an inconsistency in the internal logic of the plaintiff's "continuum of tort" theory. The plaintiffs often refer to the "confirmation" letter as the calculated genesis of the defendants' wrongdoing or an act in furtherance of the tort and thus part of the tort. What the plaintiffs suggest is a conspiracy to commit negligence, a paradox at best.

### (c) *Transacting Business*

■ Another basis for *in personam* jurisdiction under the Illinois Long Arm Statute is when the cause of action arises from the non-resident plaintiff "transacting business" in the state. The plaintiffs intimate that the two Mayo Clinic confirmation letters to the Rogers' home in South Beloit, Illinois and Steve Rogers' one phone call from South Beloit to the Mayo Clinic are acts of "transacting business" that give rise to the plaintiffs' cause of action. In other words, the nexus between the defendants' Illinois contacts and the plaintiffs' injury is sufficiently strong that the alleged torts "lie in the wake" of the contacts. *Jacobs v. Kahan Co. v. March*, 740 F.2d 587, 591 (7th Cir.1984).

The court rejects the plaintiffs' argument that the mere exchange of phone calls and letters between a non-resident defendant and a resident plaintiff constitutes "transacting business" for purposes of the Illinois Long Arm Statute. *See Connolly, supra; U.S. Reduction Co. v. Amalgamet, Inc.*, 545 F.Supp. 401 (N.D.Ill.1982); *Gor-*

*don v. Tow*, 148 Ill.App.3d 275, 498 N.E.2d 718, 101 Ill.Dec. 394 (1st Dist.1986); *Woodfield Ford, Inc. v. Akins Ford Corp.*, 77 Ill.App.3d 343, 395 N.E.2d 1131, 32 Ill.Dec. 750 (1979); [3] *cf. Walker v. Carnival Cruise Lines, Inc.*, 681 F.Supp. 470 (N.D.Ill.1987) (mass advertising in Illinois for cruise line "lies in wake" of injury on a Florida cruise ship, sufficient to meet "transacting business" standard); *Morton v. Environmental Land Systems, Ltd.*, 55 Ill.App.3d 369, 370 N.E.2d 1106, 13 Ill.Dec. 79 (1st Dist. 1977) (held to be "transacting business" when defendant solicits the sale of partnership units and the plaintiff now alleges fraud in consummating sale of these units).

In the instant case, the defendants' allegations of negligence do not "lie in the wake" of the two confirmation letters and plaintiff Steve Rogers' one phone call. These communications did not involve the decision to send the plaintiff Steve Rogers to Rochester. Rather, these communications were merely ministerial acts attempting to carry out the discovery accommodation reached between the parties to the Wisconsin product liability suit.

## II. "Doing Business".

■ The plaintiffs lastly argue that the defendants are "doing business" in Illinois.[4] Illinois legal precedent allows a court to exercise personal jurisdiction over a non-resident defendant who "does business" in Illinois, regardless of the cause of action's connection to the non-resident's activities in Illinois. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 199–203, 429 N.E.2d 847, 850–53, 57 Ill.Dec. 730, 733–36 (1981).

The plaintiffs allege that the defendants Mayo Clinic and Dr. Furlow are "doing business" in Illinois by virtue of the wide variety of activities in which they participate in Illinois including the following: (1) approximately ten to twelve percent of Mayo Clinic's patients and a corresponding amount of Dr. Furlow's patients are Illinois residents, many of whom have been referred to Mayo through Illinois doctors; (2) Mayo Clinic and Dr. Furlow regularly correspond with Illinois health professionals as part of follow-up care; (3) Mayo Clinic publishes and disseminates a newsletter nationally and, in addition, holds medical seminars in Rochester in which a large number of Illinois physicians attend; (4) Dr. Furlow and other members of the Mayo Clinic staff make presentations and instruct various medical students and groups in Illinois; (5) Dr. Furlow and other Mayo Clinic staff members author medical articles disseminated nationally.

On the other hand, neither of the defendants has an office, employee or representative in Illinois; nor are they registered to do business or licensed to practice medicine in Illinois.

In the court's estimation, the aforementioned activities do not constitute "doing business" in Illinois. In general, "doing business" means the defendants are conducting business in Illinois of such a character and extent as to warrant the inference that they have subjected themselves to the jurisdiction and laws of Illinois. *Cook Associates*, 429 N.E.2d at 852, 57 Ill.Dec. at 735, *quoting Pembleton v. Illinois Commercial Men's Association*, 289 Ill. 99, 104, 124 N.E. 355 (1919), *appeal dismissed*, 253 U.S. 499, 40 S.Ct. 483, 64

---

**3.** Still other cases demonstrate that residents of one state who travel to another jurisdiction for medical treatment cannot prosecute a malpractice action in their state of residence for injuries arising out of that treatment. *See, Veeninga v. Alt,* 111 Ill.App.3d 775, 444 N.E.2d 780, 67 Ill. Dec. 544 (1982); *Ballard v. Rawlins,* 101 Ill. App.3d 601, 428 N.E.2d 532, 56 Ill.Dec. 940 (1981); *Muffo v. Forsyth,* 37 Ill.App.3d 6, 345 N.E.2d 149 (1976); *accord Yates v. Muir,* 112 Ill.2d 205, 492 N.E.2d 1267, 97 Ill.Dec. 394 (1986).

The plaintiffs attempt to distinguish these later cases by maintaining that the plaintiff did

not voluntarily submit to Dr. Furlow's examination but was compelled to attend. In fact, the court finds that the plaintiff's presence in Minnesota was not compelled but merely a result of an accommodation between both parties' attorneys in the prior Wisconsin product liability suit. (*See* Ex. A–G in defendant's reply brief).

**4.** The plaintiffs do not attempt to show how the defendants Rochester Memorial Hospital, Dr. Wilson, or Dr. Knoll are "doing business" in Illinois.

L.Ed. 1032 (1920). In turn, this rule has consistently required activities greater than solicitation. The non-resident's activities must constitute a systematic and continuous presence in the state. *Maunder v. DeHavilland,* 102 Ill.2d 342, 466 N.E.2d 217, 221, 80 Ill.Dec. 765, 769 (1984), *cert. denied,* 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). For example, an office in the state where more than solicitation occurs may constitute "doing business" in Illinois. *See Berks v. Rib Mountain Ski Camp,* 571 F.Supp. 500 (N.D.Ill.1983) (Wisconsin corporation's circulars and "exhibit show" booths in Illinois equal mere solicitation); *Cook Associates, supra,* (non-resident employee was not doing business in Illinois despite exhibit at trade shows and previous interview with plaintiff in Illinois); *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917) (Cardozo, J.) (several visits to forum by defendants' representatives to conduct marketing research is not doing business); *cf. St. Louis–San Francisco R & R Co. v. Gitchoff,* 68 Ill.2d 38, 369 N.E.2d 52, 11 Ill. Dec. 598 (1977) (found to be "doing business" in Illinois where office in Chicago had 60 to 80% of employees soliciting business and one employee coordinating railcar movement); *See also Hertz Corp. v. Taylor,* 15 Ill.2d 552, 155 N.E.2d 610 (1959) (found to be doing business when Chicago office solicited business and sold tickets). *Connelly v. Uniroyal, Inc.,* 75 Ill.2d 393, 389 N.E.2d 155, 27 Ill.Dec. 343, *cert. denied* 444 U.S. 1060, 100 S.Ct. 992, 62 L.Ed.2d 738 (1980) ("doing business" where defendant's products regularly entered Illinois in substantial amounts).

In the instant case, a large fraction of the Mayo Clinic and Dr. Furlow's patients are Illinois residents. The court finds little significance in this fact for purposes of "doing business" in Illinois. The patients are not treated in any fashion in Illinois. The defendants treat people, not states, and therefore they are not invoking the protection of the laws of Illinois by treating residents of Illinois exclusively in Minnesota. The presences of past, present and future patients of the Mayo Clinic and Dr. Furlow in Illinois do not provide any "presence" of the relevant defendants in Illinois.

In this same vein, follow-up correspondence with Illinois patients and doctors are neither regular, continuous or systematic in scope, rather, they are performed on a need-be basis. Such correspondence is random and temporary and by no stretch of the imagination constitutes a continuous presence in Illinois.

Finally, all the defendants' seminars, articles and newsletters and their corresponding Illinois patient referrals fail to meet the "greater than solicitation standard" of *American Radiator, supra.* Even assuming that Mayo Clinic's seminars and national newsletter and Dr. Furlow's seminars, lecturing and papers are performed not for professional reasons but to solicit Illinois referrals as the plaintiffs suggest, these activities still only involve the solicitation of business and nothing more. Without more, the defendants are not "doing business" in Illinois.

Accordingly, for all the reasons stated above, the court grants the defendants' motion to dismiss for lack of *in personam* jurisdiction. Thus, the court finds it unnecessary to examine the constitutional implications of the court's exercise of personal jurisdiction.

## CONCLUSION

For the reasons set forth above, the court lacks personal jurisdiction over the defendants. Accordingly, the court grants the defendants' Fed.R.Civ.P. 12(b)(2) motion to dismiss. This case is hereby dismissed without prejudice.