Steve O. **ROGERS**, Plaintiff,

v.

Dr. William **FURLOW**, Dr. Knoll, Dr. Wilson, Mayo Clinic (a/k/a Mayo Distributing Corp., Mayo Foundation, Mayo Foundation for Medical Education and Research, Inc., Mayo Group Practices, Mayo Health Plan, Mayo High Booster Club, Mayo Housing Associates Limited Partnership, Mayo Investment Partnership, Mayo Investment Partnership, Inc., Mayo Lake Association, Inc., Mayo Management Services, Inc., Mayo Manufacturing, Inc., Mayo Medical Resources, Mayo Medical Services, Ltd.), and Rochester Methodist Hospital, a non-profit corporation, Defendants.

Civ. No. 4–88–1118.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 6, 1989.

Richard A. Heilprin, Madison, Wis., William Crandall, Minneapolis, Minn., David Albright, Bloomington, Minn., for plaintiff.

Paul B. Klass, William R. Stoeri, Dorsey & Whitney, Minneapolis, Minn., Benjamin R. Hippe, Mayo Clinic, Legal Dept., Rochester, Minn., for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motion to dismiss. Because the court has considered material outside the pleading, this motion will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 12(b). Defendants contend that plaintiff failed to bring suit within the period provided for by Minnesota's medical malpractice statute of limitations. For the reasons set forth below, defendants' motion is granted.

## FACTS

On May 19, 1979, plaintiff Rogers had surgically implanted an inflatable penile prosthetic device. Dr. Juan Beltran of the Beloit Memorial Hospital in Beloit, Wisconsin implanted the prosthetic device which American Medical Systems had manufactured. Thereafter, Rogers brought suit against Dr. Beltran and the Beloit Memorial Hospital and commenced an independent action against American Medical Systems. Ultimately the two suits were consolidated and presented to the United States District Court for the Western District of Wisconsin.

While the case was pending in Wisconsin federal court, defense counsel retained Dr. William Furlow of the Mayo Clinic to perform an independent medical examination on Rogers. The purpose of the examina-

tion was to assist the Wisconsin defendants' preparation for trial. The medical examination commenced on January 6, 1987, at the Mayo Clinic. Rogers' medical relationship with Dr. Furlow and the other defendants in the case which underlies this motion was not limited to a simple medical examination, however. Rogers stayed at defendant Methodist Hospital until January 14, 1987, during which time the defendants implanted in him a new inflatable penile prosthetic device. After the surgery Dr. Furlow told Rogers that a penile straightening procedure might have to be performed, but that they should wait for up to six months because the device itself might correct the problem. Rogers' last contact with the defendants took place on January 14, 1987, and he has not been treated by or had any contact with them since that time.

After the second surgery, Rogers attempted to bring an action for medical malpractice against the Mayo Clinic and the other defendants in conjunction with his then pending case in Wisconsin federal court. The Wisconsin federal court would not allow this new action to be added to the case before it, however. Consequently, Rogers and his then living wife commenced an action in Illinois based on the same allegations that are involved in the litigation which underlies this motion. On November 1, 1988, the United States District Court for the Northern District of Illinois dismissed the case for lack of personal jurisdiction, 699 F.Supp. 672 (N.D.Ill.1988).

On December 30, 1988, Rogers filed the present action. Defendant Mayo Clinic received service of process on February 17, 1989, Dr. Furlow was served on February 20, 1989, and Dr. Knoll was served on February 21, 1989.

### DISCUSSION OF LAW

A motion for summary judgment will be granted if, under the governing law, there can be but one reasonable conclusion as to the outcome. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1985). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. at 2510.

Defendants have brought this motion on the ground that plaintiff's action was commenced subsequent to the running of Minnesota's medical malpractice statute of limitations. Minnesota Statute section 541.07(1) bars medical malpractice actions that are not commenced within two years from the date on which the physician's treatment for a particular condition ceases. Minn.Stat. § 541.07(1) (1988). Rule 3.01 of the Minnesota Rules of Civil Procedure states that "[a] civil action is commenced against each defendant when the summons is served upon him or is delivered to the proper officer for such service." Defendants last treated Rogers on January 14, 1987, and defendant Mayo Clinic was not served in this action until February 17, 1989, more than two years after Rogers was last treated. Thus, a common sense application of Minnesota law to the facts of this case leads to the conclusion that the two year limitations period had run before the action was commenced and the suit should be dismissed. Plaintiff presents several arguments which give the court pause, however.

### A. The Federal Cause of Action

Plaintiff's first argument is that the two-year limitations period of Minnesota Statute section 541.07(1) does not apply to this case because this is a federal question case and not a diversity of citizenship case. Plaintiff contends that the primary claim in his Complaint stems from a violation of the medical discovery provisions of Rule 35 of the Federal Rules of Civil Procedure and that the medical malpractice claims in the Complaint are merely secondary or incidental to this "federal" claim. Rogers alleges that this is a federal question case because his contact with the Mayo Clinic was initiated pursuant to the discovery procedures provided for by Rules 26 and 35 of the Federal Rules of Civil Procedure. Rogers claims that during his contact with the defendants, the defendants unilaterally changed their role from independant medical examiners to health care providers. He further argues

that this unilateral change was a violation of Rules 26 and 35 and that this violation gave rise to a federal cause of action.

The court finds plaintiff's argument unconvincing. Plaintiff's contention that a violation of the Federal Rules of Civil Procedure somehow gives rise to a federal cause of action is unsupported by case law and inconsistent with the legislation which led to the creation of the rules. The Rules Enabling Act provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072 (1982). Moreover, the Supreme Court has consistently held that the Federal Rules of Civil Procedure were created for the purpose of regulating procedural matters and not to create new substantive rights. In *Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941) and its progeny the Court has closely scrutinized any attempts to "abridge, enlarge, or modify substantive rights in the guise of regulating procedure." *Id.* at 14, 61 S.Ct. at 426. *See also United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1940); *Daily Income Fund, Inc., et al. v. Fox*, 464 U.S. 523, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984) (Stevens, J., concurring).

■ An examination of the Rules Enabling Act and the cases cited above reveals that a violation of the Federal Rules of Civil Procedure does not give rise to an independent federal cause of action as plaintiff claims. Thus, it is not surprising that plaintiff has failed to cite any statute or case which creates such a cause of action or recognizes that such a cause of action exists. The court concludes that there is no separate federal cause of action such as plaintiff alleges which would grant this court federal question jurisdiction. Thus, this is a diversity of citizenship case.

**B. The Relation–Back Argument**

■ Plaintiff's second argument is founded on the relation-back provision of Rule 15(c) of the Federal Rules of Civil Procedure. Plaintiff argues that his Minnesota Complaint which underlies this motion is an amendment of his dismissed Illinois Complaint and therefore that it relates back to the date of the Illinois Complaint. The Illinois Complaint was filed on April 27, 1987, and it is clear that if the Minnesota Complaint relates back to that date, the action was commenced well within the two-year limitations period. Plaintiff suggests that his Complaint filed with this court is merely an amendment of his Complaint filed in Illinois. This argument depends on a broad definition of "amendment" as that word is used in Rule 15(c). The court holds that such an expansive reading of Rule 15(c) would be improper. Indeed, the Eighth Circuit has held that after a Complaint has been dismissed, the right to amend under Rule 15(a) terminates. *Dorn v. State Bank of Stella*, 767 F.2d 442, 443 (8th Cir.1985).

■ The court also finds that plaintiff's implicit reliance on the Equitable Tolling Doctrine is unsound. Plaintiff contends that the filing of his action in Illinois tolled the statute of limitations in Minnesota. Rule 15(c) does not support this contention and plaintiff cannot rely on the Equitable Tolling Doctrine because Minnesota courts have repeatedly rejected it. *Lambrecht v. Ford Motor Co.*, 729 F.2d 1162 (8th Cir. 1984).

**C. Termination of Care**

This motion was argued before the court on June 23, 1989. At that time plaintiff orally moved the court to allow further briefing on the motion and to permit plaintiff to amend his Complaint. The court granted the first motion and denied the second.

■ Plaintiff's supplementary memorandum of law is largely devoted to rephrasing arguments previously presented to the court. However, the new memorandum also brings to light new facts which the court believes merit discussion. The new facts pertain to the precise date plaintiff left the defendants' care. This date is of consequence, of course, because medical malpractice actions in Minnesota must be commenced within two years from the date on which the physician's treatment for a

particular condition ceases. *Grondahl v. Bulluck*, 318 N.W.2d 240, 243 (Minn.1982).

In his new memorandum plaintiff relies heavily on Dr. Furlow's deposition testimony. In his deposition testimony Dr. Furlow stated that after the surgery he told Rogers that a penile straightening procedure might have to be performed, but that they should wait up to six months because the penile prosthesis itself might solve the problem. Furlow also testified that he made mention of this fact in a letter he wrote to Rogers' referring physician. Plaintiff argues that Dr. Furlow's statements indicate that there was need for further treatment, and thus that treatment did not cease until at least six months after Furlow made the statements, that is, until July 14, 1987. The issue which the court must determine then, is whether Rogers was still "within the defendants' care" as a result of this statement even though defendants had no further contact with Rogers thereafter.

In *Schmit v. Esser*, 183 Minn. 354, 236 N.W. 622 (1931), the Minnesota Supreme Court listed three factors to be considered in determining when treatment ceases: (1) whether there is a relationship between physician and patient with regard to the illness, (2) whether the physician is attending and examining the patient, and (3) whether there is something more to be done. *Id.* at 358–59, 236 N.W. at 625; *see also Grondahl v. Bulluck*, 318 N.W.2d 240 (Minn.1982); *Johnson v. Winthrop Laboratories, Inc.*, 291 Minn. 145, 190 N.W.2d 77 (1971). *Schmit* held that all three of these factors must be present in order to conclude that treatment has not ceased. 183 Minn. at 358–59, 236 N.W. at 625.

With regard to the first factor, plaintiff's earlier arguments before this court have placed him in a difficult position for proving its existence. Plaintiff himself admits "[w]ith respect to the first factor, the plaintiff has at length contended that there was no true doctor/patient relationship." (Plaintiff's Supplementary Memoranda of Law at 17). The plaintiff now urges the court to assume for the sake of argument

that a doctor/patient relationship existed. The court's role, however, is not to assume certain facts, but rather to determine if such facts exist. The plaintiff having presented no evidence that a doctor/patient relationship existed after January 14, 1987, the court concludes that the first factor is not present.

With respect to the second factor, there is no evidence that the defendants attended or examined the patient after January 14, 1987. Thus, the court concludes that the second factor is absent as well. Having held that the first two factors are not present, it is not necessary to determine whether the third factor exists. The court holds that defendants' treatment of plaintiff ceased on January 14, 1987, and that the two-year limitations period began running from that date.

## CONCLUSION

The court concludes that there is no independent federal cause of action on which this court can assert federal question jurisdiction. The Complaint alleges only state medical malpractice claims which are brought in federal court solely on the basis of diversity of citizenship. In a diversity case Minnesota state law determines when an action is commenced for statute of limitations purposes. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); *Fischer v. Iowa Mold Tooling Co.*, 690 F.2d 155 (8th Cir. 1982). Defendants' treatment of plaintiff ceased on January 14, 1987, and the limitation period began running on that date. Furthermore, plaintiff's Illinois suit did not have the effect of tolling the Minnesota medical malpractice statute of limitations. Therefore, this suit was not commenced until February 17, 1989, when defendant Mayo Clinic received service of process. This was more than two years after defendants last treated plaintiff. Hence, Minnesota Statute section 541.07(1) mandates that the plaintiff's action now before the court be barred.

Based on the foregoing, IT IS HEREBY ORDERED that defendants' motion to dismiss plaintiff's action is granted.

LET JUDGMENT BE ENTERED AC-CORDINGLY.