GENERAL ELECTRIC RAILCAR SERVICES CORPORATION, Plaintiff-Appellee, v. WILMINGTON TRUST COMPANY, Defendant-Appellant (National Bank of Washington, Defendant-Appellant).

First District (5th Division)  Nos. 1—90—1668, 1—90—1669 cons.

Opinion filed December 28, 1990.—Rehearing denied February 8, 1991.

Mary T. Zerega, of McDermott, Will & Emery, of Chicago, for appellant Wilmington Trust Company.

Damon E. Dunn and Julie L. Murphy, both of Levin & Funkhouser, Ltd., of Chicago, for appellant National Bank of Washington.

Hubert O. Thompson, of Carney & Brothers, Ltd., of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Petitions for leave to appeal an order of the circuit court of Cook County denying motions to quash service for want of *in personam* jurisdiction, brought pursuant to Supreme Court Rule 306(a)(1)(iii) (107 Ill. 2d R. 306(a)(1)(iii)), were granted by this court to Wilmington Trust Company (WTC) (No. 1—90—1668) and to the National Bank of Washington (NBW) (No. 1—90—1669). The appeals have been consolidated, and the only issue before this court is whether the trial court erred when it ruled that, pursuant to section 2—209 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—209), WTC, a Delaware corporation whose principal place of business is in Wilmington, Delaware, and NBW, a Delaware corporation whose principal place of business is in Washington, D.C., were subject to the jurisdiction of Illinois courts for the purpose of defending a breach of contract action brought by General Electric Railcar Services Corporation (GERSCO), a Delaware corporation whose principal place of business is in Chicago, Illinois.

While the ultimate issue, the interpretation of section 2—209 of the Code or the so called long-arm statute, is a rather straightforward one, it is the facts of the case which complicate the matter. The facts

of the case, as alleged in GERSCO's complaint, are as follows.

On May 15, 1972, a trust (Trust) was formed by WTC and NBW for the purpose of purchasing certain railroad locomotives from the manufacturers, General Motors and the General Electric Company (not GERSCO). The defendants were the beneficiaries of this Trust, and WTC acted as the trustee. At the time the Trust was formed, it was intended that the Trust would lease the locomotives to the Chicago, Milwaukee, St. Paul and Pacific Railroad Company (Chicago Railroad). A lease agreement (Lease), concerning this arrangement, also dated May 15, 1972, was fully executed on June 13, 1972. It provided that WTC, as trustee, would lease the locomotives to Chicago Railroad, as lessor, for a period of 15 years, expiring on December 1, 1987.

At the same time, a letter agreement (Letter), dated June 12, 1972, was entered into by WTC and NBW, in their individual capacities, with NAC Leasing Corporation, a subsidiary of North American Car Corporation (NACC), which apparently operated out of Chicago, Illinois. This Letter provided that: (a) NAC Leasing Corporation would receive compensation for the services it provided in arranging and negotiating the Lease, and (b) that, upon the termination of the Lease, NACC would attempt to renegotiate the lease, provide services in remarketing the equipment or purchase the locomotives for a guaranteed price.

On December 4, 1984, NACC filed a voluntary petition for relief under chapter 11, Title 11, of the United States Code, and on February 14, 1986, with the approval of bankruptcy court, NACC agreed to sell certain assets, including the remarketing agreement, to General Electric Credit Corporation (GECC) or its designee. GERSCO, the designee of GECC, then notified WTC and NBW on July 23, 1986, that it had acquired all rights, title and interest in the Letter, which WTC and NBW had entered into with NACC.

Apparently on April 2, 1987, WTC advised GERSCO that GERSCO's services would not be required for the remarketing of the equipment, and the leased equipment was later sold. GERSCO alleged that it was due compensation under the Letter, despite the fact that it did not actually perform any remarketing services, since it always stood ready to perform.

Whether GERSCO is entitled to any compensation under the aforementioned Letter agreement it purchased from NACC is not at issue on appeal. The issue is whether WTC and NBW, foreign corporations, are subject to the jurisdiction of our Illinois courts. In response to GERSCO's complaint, both NBW and WTC filed motions to

quash service and dismiss for lack of personal jurisdiction. They appeared specially to contest jurisdiction, contending that they were foreign corporations that did not transact business in Illinois. The trial court denied their motions and both defendants appeal.

Since the only issue before this court is whether the defendants, WTC and NBW, were properly found to be subject to the jurisdiction of Illinois courts, we begin our discussion with a recitation of the pertinent provisions of the so-called long-arm statute, section 2—209 of the Code, upon which jurisdiction was founded. (Ill. Rev. Stat., 1988 Supp., ch. 110, par. 2—209.) This statute provides:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits his person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

\* \* \*

(d) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section."

As can be seen from the provisions stated above, the statute precludes Illinois courts from exercising personal jurisdiction over corporations that do not transact business in this State. We observe that, after reviewing Illinois and Federal case law concerning the interpretation of this statute, it might more aptly be named the short-arm statute, rather than the long-arm statute.

In any event, defendants in this case continue to argue that they did not transact business in this State within the meaning of the statute and that, even if they did transact business in this State, the present cause of action did not arise from the transaction of that business. The trial court, however, found that the Lease, which had been entered into by the Trust, was attributable to WTC and NBW individually, and that this contact with the State of Illinois was sufficient to confer jurisdiction over them in the present cause of action arising from the Letter agreement, since the Letter and the Lease were, in essence, one transaction and could be viewed as such for purposes of jurisdiction. We agree.

■ In Illinois, a court's exercise of jurisdiction over a nonresident corporation not licensed in Illinois may be founded upon (a) the fact that the corporation has been found to be "doing business" within the State, or (b) compliance with the requirements of the long-arm stat-

ute. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.) If a foreign corporation has been found to "do business" within the State, it is amenable to the jurisdiction of Illinois courts even for causes of action not arising from the transaction of business within the State. (*Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill. 2d at 200.) In the present case the trial court ruled that the defendants were not "doing business" within the State for the purpose of asserting jurisdiction over them on causes of action not arising from a transaction of business within the State. We note, too, that the parties on appeal have restricted their arguments to the issue of whether the court's exercise of jurisdiction pursuant to the long-arm statute, section 2—209(a)(1) of the Code, was proper. Consequently, we shall confine our discussion to this inquiry.

When faced with the question of whether personal jurisdiction may be exercised over a nonresident corporation, pursuant to the long-arm statute, the court must first look to the meaning of the long-arm statute and determine whether the facts alleged within the complaint indicate that the statutory requirements have been met. (*Rollins v. Ellwood* (1990), 141 Ill. 2d 244.) Only then should the court determine whether the assertion of jurisdiction over the nonresident is permissible under the Federal due process standard, *i.e.*, whether the nonresident maintained " 'certain minimum contacts with it such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " (*Rollins*, 141 Ill. 2d at 271, quoting *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) The scope of the Illinois long-arm statute is not coextensive with the mandates of the Federal due process clause. (*Rollins*, 141 Ill. 2d at 272.) The Illinois long-arm statute may, in fact, restrict the power of Illinois courts to assert jurisdiction over a nonresident, even when the nonresident would be found to have sufficient minimum contacts under Federal law. (*Rollins*, 141 Ill. 2d at 274.) Thus, the more relevant inquiry is whether jurisdiction may be invoked pursuant to the Illinois long-arm statute, and the party asserting jurisdiction has the burden of proof to show that jurisdiction is proper. *Kotlisky v. Kotlisky* (1990), 195 Ill. App. 3d 725, 737, 552 N.E.2d 1206.

In the present case the plaintiff, GERSCO, asserted jurisdiction on the basis that WTC and NBW "transacted business" within the meaning of the long-arm statute. Thus it was its burden to show that (1) WTC and NBW transacted business within Illinois; (2) that the cause of action arose from the transaction of that business; and (3) that the assertion of personal jurisdiction was fair, just and reason-

able, consistent with the due process guarantees provided by both the Illinois and Federal Constitutions. *Kotlisky,* 195 Ill. App. 3d 725, 522 N.E.2d 1206; *Rollins,* 141 Ill. 2d at 274.

■ A single act may constitute "transaction of business" under the long-arm statute as long as it is this act which forms the basis of plaintiff's claim, *i.e.,* the plaintiff must show that his claim lies "in the wake of the commercial activities by which [the] defendant [allegedly] submitted to the jurisdiction of Illinois courts." (*Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 833, 474 N.E.2d 1297.) Factors which may be considered when determining whether the "transaction of business" prong of the statute has been met are: (1) who initiated the transaction with this State; (2) where the contract was entered into; and (3) where the contract was to be performed. (*Boatmen's Bank v. Adams* (1989), 191 Ill. App. 3d 176, 186, 547 N.E.2d 742.) To constitute "transaction of business" such that a nonresident will be subjected to the jurisdiction of Illinois courts, the nonresident defendant must have voluntarily sought the benefits and protections of the laws of this State. *Brainerd v. Balish* (1987), 164 Ill. App. 3d 836, 518 N.E.2d 317.

■ In the present case there appears to be no question that the Trust has sufficient contacts with Illinois, via the Lease agreement with Chicago Railroad, to subject it to the jurisdiction of Illinois courts, at least with respect to that Lease transaction. As plaintiff GERSCO points out, the Trust was the owner of the locomotives which were delivered to Chicago Railroad in Chicago; the locomotives were used within this State; the Lease payments were made from Illinois to the Trust, generating gross income to the Trust; and it was written into the Lease agreement that the Lease was to be construed in accordance with Illinois law, whereby the Trust took advantage of the benefits and protections of the laws of this State. (See *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155; *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761.) The question now is whether the beneficiaries of the trust, WTC and NBW, also have sufficient contacts with this State by virtue of the Trust, making them amenable to the jurisdiction of Illinois courts, not with regard to the Lease agreement, itself, but with regard to the related Letter agreement, which was entered into by WTC and NBW, in their individual capacities, with NACC. We think it does.

■ It seems clear, as the trial court found, that the Letter agreement, although memorialized after the formation of the Trust and the negotiation of the Lease, was actually entered into by WTC and NBW

as part and parcel of one entire transaction, which consisted of the purchase and lease of certain locomotive equipment, as well as an agreement concerning their disposal or remarketing at the termination of the initial 15-year leasing period. We believe that, under these circumstances, it is fair, just and reasonable to consider WTC and NBW as the alter egos of the Trust for jurisdictional purposes and to hold that the contacts of the Trust may be attributable to WTC and NBW, individually, at least with respect to the transaction, which includes both the Lease and the Letter agreement.

Having found that the contacts of the Trust were attributable to the defendants, we further find that these contacts satisfy the minimum contacts needed so as not to offend traditional notions of fair play and substantial justice, in keeping with the Federal due process guarantee.

The order of the circuit court of Cook County, finding that it could exercise personal jurisdiction over the defendants, Wilmington Trust Company and National Bank of Washington, is hereby affirmed.

Affirmed.

LORENZ, P.J., and GORDON, J., concur.