VIVIAN KADALA, Plaintiff-Appellant, v. CUNARD LINES, LTD., Defendant-Appellee.

First District (5th Division)   No. 1—89—1565

Opinion filed February 28, 1992.

Lawrence H. Hyman, of Lawrence H. Hyman & Associates, of Chicago, for appellant.

Michael A. Snyder & Associates, of Chicago (Richard A. Forster and Michael A. Snyder, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff Vivian Kadala appeals from an order of the trial court granting defendant Cunard Lines, Ltd.'s motion to quash service and to dismiss plaintiff's complaint for lack of personal jurisdiction. For the reasons set forth below, we affirm.

On December 26, 1985, plaintiff, an Illinois resident, was a passenger on defendant's cruise ship, the M/V Queen Elizabeth II, which embarked from New York to the Caribbean. While on board defendant's ship, plaintiff sustained personal injuries using a whirlpool bath. Plaintiff filed a complaint on December 23, 1986, alleging that defendant was careless and negligent in improperly instructing, controlling, operating and supervising whirlpool baths on the ship, and that as a result she sustained second degree burns on her legs after the use of the whirlpool.

In her complaint, plaintiff alleged that during the year 1985 defendant for promotional purposes "published and placed into the stream of commerce" various informational brochures about the Queen Elizabeth II. She further alleged that she was provided with one of these brochures through the Americana Travel Agency in Northfield, Illinois. The complaint went on to allege that plaintiff entered into a contractual agreement with defendant for a Caribbean cruise, and defendant issued a passenger contract to the plaintiff for the cruise.

Defendant is a foreign corporation, organized under the laws of the United Kingdom, with its principal place of business and corporate offices in Southhampton, England. Defendant maintains an office in New York City. Summons was served on defendant's registered agent in New York, New York, on January 6, 1987.

Defendant filed a special and limited appearance contesting jurisdiction, and moved to quash service of process and dismiss the complaint for lack of personal jurisdiction. In support of its motion to quash and dismiss, defendant offered the affidavit of Frank V. Kelly, defendant's administrator of legal affairs, as evidence that it did not transact business in Illinois.

In his affidavit, Kelly stated that defendant is not registered to do business in Illinois, nor does it have a registered agent in Illinois. Defendant does not own or occupy any real or personal property in Illinois. Its only telephone numbers published in Illinois are its New York office number and an 800 toll-free number. Cunard ships no goods into Illinois nor does it sell any goods or services within the State. None of defendant's vessels ever sail into Illinois waters.

Kelly's affidavit also stated that defendant has no agents, employees, officers or directors who reside in Illinois. Kelly further stated that Illinois travel agents who receive fares and book passage on Cunard vessels are acting as agents for the passenger and that Cunard has not authorized any travel agent to hold itself out as an agent of Cunard. All contracts for cruises are "made" in New York, and all tickets are issued from New York. Plaintiff's ticket was issued in New York.

In response to defendant's motion to quash and dismiss, plaintiff submitted the deposition of Mark T. Carlesimo, assistant vice-president of legal affairs for Cunard, which plaintiff contended showed that defendant spent hundreds of thousands of dollars per year in advertising in the State and derived millions of dollars of revenue from Illinois residents as a result.

In his deposition, Carlesimo stated that he knew that Cunard had one employee in Illinois, a sales representative, who may also have been employed 18 months earlier when Kelly prepared his affidavit denying the presence of any Cunard employees in Illinois. Carlesimo explained that the Cunard sales representatives generally cover a multistate territory. Their duties are to service travel agents in their area by answering questions or distributing materials to them, including brochures and special offers on particular cruises. They do not, however, have the authority to write passenger contract tickets and have no contact with potential passengers.

The sales representatives do not advertise in the yellow or white pages of the telephone directory as representatives of Cunard, nor is any travel agency authorized to advertise Cunard cruises in their telephone listings. When shown a copy of the Chi-

cago yellow pages for 1986/87 listing Cunard cruises with two travel agencies, Carlesimo said that he had no knowledge of the two agencies, and assumed the listings were an unauthorized use of Cunard's marks.

According to Carlesimo, 95% to 99% of defendant's business is done through travel agents. Carlesimo outlined the procedure which a customer dealing with a travel agent would be required to follow to purchase a ticket for one of defendant's cruises. According to Carlesimo, the prospective customer would never enter into direct dealings with Cunard. All contact was with the travel agent. If a customer wished to travel on a Cunard cruise, he would advise his travel agent, who in turn would call defendant's New York office to reserve the cruise and would be told the price of the cruise. The passenger would then pay the travel agent, who after deducting its commission would remit the balance to Cunard. Upon Cunard's receipt of the balance due, Cunard would issue a ticket out of its New York office and send it to the agent.

Regarding revenue, Carlesimo stated that for the fiscal year 1986/87, Cunard derived $167 million in "total sea revenue," 95% attributable to passenger fares from the United States, of which $5.8 million, or almost 3.5% of defendant's U.S. revenue, came from Illinois. (Carlesimo did not have readily available figures for 1985, the year in question, due to a new computer system acquired by defendant in 1986.) In 1987/88, national revenues were $182 million, while Illinois revenues were $6.4 million (3.5%).

Carlesimo also reviewed advertising expenditures by Cunard. For the 1987/88 fiscal year, total print advertising nationally was $5.5 million, with $562,000 being spent in Illinois, primarily in the Chicago area. According to invoices from its advertising agency, in calendar year 1985, Cunard placed 82 advertisements in the Chicago Tribune, at a cost of slightly over $500,000. In 1986, Cunard spent $233,000 for 48 advertisements in the Chicago Tribune, and in 1987, $470,000 for 51 advertisements.

As a result of these expenditures and the revenue derived from Illinois, plaintiff contended that defendant had performed sufficient acts to constitute the "transaction of business" in the State, so as to make defendant subject to jurisdiction pursuant to the Illinois long-arm statute. Ill. Rev. Stat. 1987, ch. 110, par. 2—209.

The trial court rejected plaintiff's arguments and granted defendant's motion to quash service and dismiss the complaint. Plaintiff now appeals.

OPINION

■ It is the plaintiff's contention that defendant's "extensive and voluntary commercial activities within the State of Illinois" are sufficient to constitute "transaction of business" under the Illinois long-arm statute. (Ill. Rev. Stat. 1987, ch. 110, par. 2—209.) That statute provides, in relevant part:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;

* * *

(d) Only causes of action arising from acts enumerated herein may be asserted against a defendant in action in which jurisdiction over him or her is based upon [subsection (a)]." Ill. Rev. Stat. 1987, ch. 110, par. 2—209.

Defendant contends, as it did in the trial court, that Cunard's jurisdictional status was previously decided adversely to the plaintiff in the case of *Wiedemann v. Cunard Line Ltd.* (1978), 63 Ill. App. 3d 1023, 380 N.E.2d 932, and should not be altered on present reconsideration. We agree. There, on facts which defendant argues are virtually identical to those here, we found that defendant's activities in this State did not amount to the "transaction of business" in the State.

In *Wiedemann*, the plaintiff sought damages for injuries suffered while on a beach in the West Indies, which he alleged was controlled by the defendant. There, as here, defendant filed a special and limited appearance contesting *in personam* jurisdiction. In support of his claim that the defendant had transacted business in Illinois, the plaintiff pointed to the following facts: (1) defendant employed two Illinois residents whose job it was to promote, in Illinois, travel on defendant's ships; (2) defendant paid for telephones for those two employees; (3) defendant permitted an Illinois travel agency to list itself in the telephone directory as agent for defendant; (4) plaintiff received his "passage contract ticket" in Illinois; (5) defendant advertised in Illinois newspapers and national publications which were circulated to Illinois residents; and (6) defendant mailed questionnaires and newsletters to Illinois promoting fly/cruise/resort tour packages. *Wiedemann*, 63 Ill. App. 3d at 1030.

In *Wiedemann,* the defendant by affidavit admitted to having two employees in Illinois. The primary duty of those employees was to promote travel on defendant's ships by providing information and brochures to independent travel bureaus. As in this case, they did not sell tickets to or have any contact with travelling passengers. All tickets were issued from defendant's New York office. No employee of the defendant ever made contact with the plaintiff to solicit the sale of the cruise plaintiff purchased.

The court found that defendant had not "transacted business" in Illinois within the meaning of the long-arm statute. "Here, the activities of Cunard in advertising and in having Illinois employees promote travel on Cunard through contacts with Illinois travel agents does not amount to the 'transaction of business,' because the Cunard employees were not authorized to, and did not, contract with anyone in Illinois." *Wiedemann v. Cunard Line Ltd.,* 63 Ill. App. 3d at 1032.

The facts in this case upon which plaintiff attempts to assert jurisdiction are identical to those in *Wiedemann,* except that defendant now has only one employee in Illinois, compared to two employees in *Wiedemann.* Here, as in *Wiedemann,* defendant's Illinois employee did not have any contact with the plaintiff to solicit the sale of the cruise to plaintiff and plaintiff's ticket was issued by defendant in New York.

Plaintiff, however, urges that *Wiedemann* is distinguishable from the instant case. The plaintiff in *Wiedemann* was injured at a hotel and beach facility which was owned and operated by La Toc Holdings, Ltd. (hereinafter La Toc), a corporate sibling owned by the same parent company as defendant Cunard. The plaintiff contends *Wiedemann* merely reflects an unwillingness to hold a defendant liable for the tort actions of another subsidiary of its parent.

In finding that Cunard did not transact business in Illinois under section 2—209(a)(1), the *Wiedemann* court did not include in its consideration the nature of the relationship between Cunard and La Toc. In determining Cunard's jurisdictional status under section 2—209(a)(1), the *Wiedemann* court correctly focused upon the business contacts with the State, stating: "Here, the activities of Cunard in advertising and in having Illinois employees promote travel on Cunard through contacts with Illinois travel agents does not amount to the 'transaction of business,' because the Cunard employees were not authorized to, and did not contract with anyone in Illinois." (63 Ill. App. 3d at 1032.) The question of the interrelation-

ship between La Toc and Cunard was invoked in regard to whether Cunard should be susceptible to jurisdiction under section 2—209(a)(2) for the commission of a tortious act in Illinois. This was asserted as an independent jurisdictional ground in *Wiedemann* predicated upon plaintiff's allegation that Cunard was substantively liable for negligent misrepresentations contained in brochures prepared by the hotel which were disseminated in Illinois. Thus it was relevant to determine whether the hotel's negligent misrepresentations in its brochures could be attributed to Cunard so as to constitute an independent jurisdictional act by Cunard in Illinois.

■ We therefore fully concur with *Wiedemann*'s analysis of Cunard's jurisdictional status under section 2—209(a)(1) (transaction of business) with respect to causes of action brought by its passengers in Illinois. In determining whether a nonresident's contacts with this State amount to the "transaction of business within this State" as required by section 2—209(a)(1), several factors must be considered:

> "who initiated the transaction (*Chicago Film Enterprises v. Jablanow* (1977), 55 Ill. App. 3d 739, 371 N.E.2d 161); where the contract was entered into (*Servo Instruments, Inc. v. Fenway Machine Co.* (1980), 92 Ill. App. 3d 509, 415 N.E.2d 34); and where the performance of the contract was to take place (*Woodfield Ford, Inc. v. Atkins Ford Corp.* (1979), 77 Ill. App. 3d 343, 395 N.E.2d 1131)." (*Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 280, 498 N.E.2d 718.)

(See also *General Electric Railcar Services Corp. v. Wilmington Trust Co.* (1990), 208 Ill. App. 3d 459, 567 N.E.2d 400.) Although no single one of these factors is controlling, each is significant. (*Arthur Young & Co. v. Bremer* (1990), 197 Ill. App. 3d 30, 554 N.E.2d 671.) Only the acts of the defendant can be considered in making this determination. *Unarco Industries, Inc. v. Frederick Manufacturing Co.* (1982), 109 Ill. App. 3d 189, 440 N.E.2d 360; see also *Braasch v. Vail Associates Inc.* (N.D. Ill. 1973), 370 F. Supp. 809, 814 ("it is the acts of defendant which are relevant").

■ None of these factors are present in the instant case. Consequently, no basis has been established to invest Illinois with jurisdiction under the transaction of business prong of the long-arm statute. (Ill. Rev. Stat. 1987, ch. 110, par. 2—209(a)(1).) Here, it was the plaintiff who initiated the transaction with defendant. She, through her travel agent, contacted defendant. The contract was entered into in New York when defendant issued the passenger ticket to plaintiff's travel agent. Performance was to take place out

of State and on the high seas. See *Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 498 N.E.2d 718 (defendant's activities did not amount to "transaction of any business" where plaintiff initiated the transaction outside Illinois, the agreement was entered into outside Illinois and the contract was to be performed outside Illinois).

Plaintiff also argues that defendant's extensive advertising in Illinois newspapers, $500,000 in 1985, is sufficient to constitute the transaction of business in this State. In addition to the advertising, plaintiff points to the substantial revenues defendant derives from Illinois residents to support her position that defendant has transacted business in Illinois. Initially, we note that her complaint does not mention newspaper advertising or allege that she ever saw any newspaper advertising prior to taking defendant's cruise. Nor does the complaint allege that Illinois was a source of substantial revenue to defendant. (See *Bobka v. Cook County Hospital* (1983), 117 Ill. App. 3d 359, 360, 453 N.E.2d 828 ("[w]here a plaintiff seeks to hold a non-resident defendant liable, the complaint must allege facts upon which jurisdiction under the long-arm statute is based").) In any event, advertising and revenue alone would not be a sufficient basis for the exercise of long-arm jurisdiction. This argument "destroy[s] the distinction between the transaction of business *in* Illinois and the transaction of business *with* an Illinois [resident]. (Emphasis added.)" (*Gordon v. Tow*, 148 Ill. App. 3d at 283, quoting *Wessel Co. v. Yoffee & Beitman Management Corp.* (N.D. Ill. 1978), 457 F. Supp. 939, 941.) Only the former is a proper basis for jurisdiction.

> "[I]f the mere payment of money, shipment of goods into, or advertisement in Illinois were sufficient to confer long arm jurisdiction it would follow that the very existence of a business relationship with an Illinois resident would automatically sustain Illinois jurisdiction. It is clear that no federal or state court would confer such a broad grant of personal jurisdiction. [Citations.] It is offensive to the concept of due process and reasonableness to conclude that an Illinois resident can compel a foreign corporation, which has virtually no contact with Illinois, to stand trial in Illinois as a result of a personal injury occurring in another state." *Braasch v. Vail Associates Inc.*, 370 F. Supp. at 814.

The case of *Wimmer v. Koenigseder* (1984), 128 Ill. App. 3d 157, 470 N.E.2d 326, *rev'd on other grounds* (1985), 108 Ill. 2d 435, 484 N.E.2d 1088, cited by plaintiff, appears to lend some support to her position that regular advertising and extensive revenue may

amount to the transaction of business. In that case, Wisconsin tavern owners who regularly advertised in Illinois and derived the vast majority of their revenue from Illinois residents were found to have transacted business in the State so as to be amenable to long-arm jurisdiction in a wrongful death and dramshop action. Plaintiff's 17-year-old decedent was killed in an automobile accident in Illinois while returning from defendants' tavern.

Initially, the court noted that regularly advertising in the State alone would be an insufficient basis for jurisdiction. However, when coupled with other more substantial contacts, the court concluded that defendants had "transacted business" in Illinois. In *Wimmer*, unlike the instant case, the majority of defendants' business consisted of sales to Illinois residents. One check of defendants' parking lot revealed that 90% of the cars bore Illinois license plates, and thus inferentially as many as 90% of its customers were from Illinois as opposed to the fractional percentage of customers of Cunard from Illinois (3.5% of Cunard revenue from Illinois). Moreover, in *Wimmer*, defendants directed their predominant marketing effort to attract Illinois residents who were unable to drink in Illinois due to its higher legal drinking age. One of their ads stated "ROUTE 83 JUST NORTH OF THE ILLINOIS STATE LINE" and "YOU NEED ONLY BE 18 TO BLAST OFF AT ROCK-IT NORTH." In addition, defendants were fully aware that the Illinois teenagers to whom it sold alcohol would return by car to Illinois after consuming defendant's alcoholic beverages. One of the defendants had even come into Illinois to discuss the problem of increased drunken driving arrests of underage Illinois residents returning from defendants' establishments. In addition, in *Wimmer*, defendants made available to Illinois patrons maps which directed them to back roads of Illinois which were not heavily patrolled by the police. Defendants also used an Illinois telephone number in their advertising. Thus the commercial contacts in this case are not comparable to those in *Wimmer*, either in degree, quality or intensity. See *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240 (whether defendant's contacts with State are sufficient "will vary with the quality and nature of defendant's activity").

Moreover, in *Wimmer*, Illinois was the place where the accident occurred and the injury was sustained. Thus jurisdiction could be predicated on the basis that Illinois was the place where the tort was committed, pursuant to section 2—209(a)(2). The court found it reasonable for the defendants to foresee that serving alcoholic bev-

erages to Illinois residents might lead to automobile accidents in Illinois, and therefore, it was reasonable to subject the defendants to suit in Illinois.

In its analysis, the *Wimmer* court relied on *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761, where our supreme court found a foreign manufacturer to be subject to long-arm jurisdiction in a tort action for injuries suffered in Illinois as a result of defendant's defective product even though the product was manufactured and marketed in foreign jurisdictions, since it was foreseeable that it would arrive in Illinois and inflict its injuries in Illinois if defectively made. The *Wimmer* court reasoned that there too under the facts presented it was foreseeable to defendants that as a result of their conduct the injury, the last act necessary to complete defendant's tort, would occur in Illinois. In the instant case, the injury to plaintiff did not occur in Illinois. Nor can we say it would be reasonable for Cunard to foresee being sued in Illinois for acts of negligence occurring on its ships at sea.

Other cases cited by plaintiff are also distinguishable. In *Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369, 370 N.E.2d 1106, the defendant personally met with one of the plaintiffs in Illinois to solicit the sale of partnership units. Defendant also called plaintiff in Illinois and sent literature directly to plaintiff's Illinois office. In *Clements v. Barney's Sporting Goods Store* (1980), 84 Ill. App. 3d 600, 406 N.E.2d 43, defendant directly solicited business in Illinois by displaying its boats and distributing literature at the Chicago Boat Show, as well as by magazine advertisements to Illinois subscribers. It was at the Chicago Boat Show that plaintiff saw defendant's boat. Defendant also sold his boats to Illinois retailers and Illinois was the ultimate destination of defendant's product. In both *Morton* and *Clements*, the defendants' contacts with Illinois were quantitatively and qualitatively greater than those of defendant here.

Furthermore, both cases purported to extend the limits of jurisdiction under our long-arm statute to the extent permitted by the due process clause, a position from which our courts have since retreated. In *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1023, our supreme court clarified the position it had taken earlier in *Nelson v. Miller* (1957), 11 Ill. 2d 378, 143 N.E.2d 673, relied on in *Morton* and *Clements*. "We do not, however, regard this observation [that the purpose of our long-arm statute is to assert jurisdiction to the extent permitted by the due pro-

cess clause] as the equivalent of declaring that the construction of section 17(1)(b) [the predecessor of section 2—209] depends entirely upon decisions determining in what circumstances due process requirements would permit long-arm jurisdiction." (*Green v. Advance Ross Electronics Corp.*, 86 Ill. 2d at 436.) "[T]he boundaries or limits under our statute are not to be equated with the 'minimum contacts' test under the due process clause." *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197, 429 N.E.2d 847.

Assertion of personal jurisdiction under our long-arm statute involves a two-step analysis. First, the statutory requirements of section 2—209 must be satisfied. And only if those requirements are met, the analysis then proceeds to the second step, the satisfaction of the constitutional requirements of due process. (*R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 489 N.E.2d 1360; *Cook Associates, Inc. v. Lexington United Corp*, 87 Ill. 2d 190, 429 N.E.2d 847; *Green v. Advance Ross Electronics Corp.*, 86 Ill. 2d 431, 427 N.E.2d 1023; *Gordon v. Tow*, 148 Ill. App. 3d 275, 498 N.E.2d 718.) As a result, it may occur that the statutory requirements have not been met, even though due process requirements have been satisfied. (*General Electric Railcar Services Corp. v. Wilmington Trust Co.* (1990), 208 Ill. App. 3d 459, 567 N.E.2d 400.) Consequently, to the extent that *Morton* and *Clements* considered only whether due process minimum contact standards had been met, they have little bearing on our statutory analysis here.

Plaintiff also directs our attention to two cases from other jurisdictions which plaintiff urges are part of a "national trend" to follow the "Illinois rule" and find jurisdiction in cases similar to the one before us. (*Shute v. Carnival Cruise Lines* (9th Cir. 1988), 863 F.2d 1437, *opinion withdrawn & question certified* (9th Cir. 1989), 872 F.2d 930, *certified question answered* (1989), 113 Wash. 2d 763, 783 P.2d 78, *opinion replaced* (9th Cir. 1990), 897 F.2d 377, *rev'd on other grounds* (1991), 499 U.S. 585, 113 L. Ed. 2d 622, 111 S. Ct. 1522; *Hollingsworth v. Cunard Line Limited* (1979), 152 Ga. App. 509, 263 S.E.2d 190.) However, those cases interpreted the "Illinois rule" to be that set forth in *Nelson v. Miller*. As noted above, this is no longer the rule, and as with *Morton* and *Clements*, these cases are inapplicable to the extent they considered only minimum contact standards.

In her memorandum to the trial court and in her brief before this court, plaintiff predicates her jurisdictional argument on the long-arm statute, a predicate which, as discussed above, we re-

ject. However, the substance of her arguments relates to the alternate "doing business" basis of jurisdiction as well as the statutory standard. As a result, we shall briefly consider that basis as well.

" ' "The distinction between the 'present and doing business theory' and the 'transaction of business' theory is that under the former a corporation that engages in a continuous and systematic course of business in the State becomes subject to the State's jurisdiction even though the subject lawsuit may have no relationship to the business that the corporation does within the State. Under the latter theory, if the corporation transacts any business within the State and a cause of action arises from that transaction then the State has jurisdiction." ' " (*Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 26, 562 N.E.2d 989, quoting *Chandler Leasing Co. v. Trus Joist Corp.* (1980), 90 Ill. App. 3d 875, 878, 414 N.E.2d 15, quoting *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 298, 367 N.E.2d 118.)

A nonresident corporation which is "doing business" in the State will be deemed to have consented to being sued in the State. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill. 2d at 199.

■ Although there is no precise test for determining when a foreign corporation is "doing business" in the State, the term has been described as conducting business " 'of such a character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and laws of the district in which it is served.' " (*Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill. 2d at 201, quoting *Pembleton v. Illinois Commercial Men's Association* (1919), 289 Ill. 99, 104, 124 N.E. 355. See also *Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 447 N.E.2d 919.) "Doing business" is a high standard and requires more than mere solicitation. (*Finnegan v. Les Pourvoiries Fortier, Inc.*, 205 Ill. App. 3d at 27.) "That rule has consistently been held as requiring activities greater than solicitation by employees who have only authority to solicit business in this State." *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill. 2d at 201. See also *Berks v. Rib Mountain Ski Corp.* (N.D. Ill. 1983), 571 F. Supp. 500, 502 ("Illinois 'doing business' criteria do not reach nonresident corporations that merely solicit business in Illinois"); *Finnegan v. Les Pourvoiries Fortier, Inc.*, 205 Ill. App. 3d 17, 562 N.E.2d 989.

■ Plaintiff here emphasizes the extensive nature of defendant's advertising activity in Illinois and revenues derived from Illinois in support of her contention that defendant has conducted busi-

ness on a "continuing and systematic basis." We do not, however, believe that these activities satisfy the "doing business" test. It would follow that activities which in the context of a single business transaction would not suffice to constitute a "transaction of business" under the long-arm statute will not rise to the level of "doing business" simply because these activities are "continuing and systematic." At best, advertising amounts only to solicitation, which, as discussed above, is insufficient to submit a defendant to jurisdiction under the "doing business" test, as it is insufficient under the "transaction of business" test postulated under section 2—209 of the long-arm statute. (Ill. Rev. Stat. 1987, ch. 110, par. 2—209. See *Radosta v. Devil's Head Ski Lodge* (1988), 172 Ill. App. 3d 289, 526 N.E.2d 561 (advertising plus maintaining an Illinois phone number, contracting for placement of sign advertising, and participation in local ski show insufficient to find defendant "doing business").) The fact that a defendant who solicits business in the State derives revenue from the State would seem to be implicit, even though not expressly discussed in the cases, as a natural result of successful solicitation, and not an independent factor upon which to determine that a nonresident corporation is "doing business" in the State. Moreover, defendant here did not receive any revenues in this State; all payments were received in its New York office. Accordingly, we hold that defendant is not "doing business" in Illinois so as to be amenable to *in personam* jurisdiction.

For all the above reasons, we affirm the order of the circuit court of Cook County granting defendant's motion to quash service and dismiss the complaint for lack of personal jurisdiction.

Affirmed.

McNULTY, P.J., and MURRAY, J., concur.